Tito **OLIVERAS** and Henry **Compta**,
Plaintiffs, Appellants,

v.

Sergio **MIRANDA LOPO**, et al.,
Defendants, Appellees.

No. 85–2030.

United States Court of Appeals,
First Circuit.

Sept. 2, 1986.

Ronald L. Rosenbaum, Hato Rey, P.R., for plaintiffs, appellants.

George Lopez Keelan, Hato Rey, P.R., with whom Luis R. Torres, San Juan, P.R., was on brief, for defendants, appellees.

Before COFFIN and BOWNES, Circuit Judges, and MALETZ,* Senior Judge.

BOWNES, Circuit Judge.

This is an appeal by Tito Oliveras and Henry Compta from a dismissal of their diversity action against Sergio Miranda Lopo, Maria Palacias and Advanced Computer Services, Inc. (Advanced), on the grounds of res judicata and collateral estoppel. A detailed exposition of the facts leading to the dismissal is necessary.

## I. THE PUERTO RICO CASE

On October 4, 1977, appellants entered into a written contract with Sergio Miranda Lopo for the formation and operation of a computer service business. The contract provided in pertinent part as follows: appellants would form a corporation to be known as Advanced Computer Services, Inc., and "invest" in it office space, a computer and certain office equipment and furniture; appellants agreed to advance, with certain limitations, the money necessary for operation, which was to be repaid out of profits; Miranda would get 50% of the profits; appellants agreed to sell and Miranda agreed to buy shares of stock in Advanced to the total amount of the original investment, which was valued at $142,457; Miranda had a three-year option in which to purchase 49% of the stock and an option, after the expiration of the three years, to purchase an additional 31% of the stock of Advanced. An addendum was added to the contract on September 4, 1979, modifying the original contract and transferring one-third of the stock of Advanced to Miranda.

On November 3, 1982, a complaint was brought in the Superior Court of Puerto Rico, San Juan Part, by Miranda, his wife, and their conjugal partnership against appellants and Advanced. The complaint alleged, as a first cause of action, that appellants had refused to deliver the certificates of stock and share the profits as agreed under the contract. The second cause of action alleged failure of appellants to carry out their corporate duties and unjust enrichment.

A settlement agreement was entered into between the parties on February 15, 1983. On March 30, 1983, the parties moved for a voluntary dismissal of the suit stating:

2. That, as part of this settlement, the parties are mutually released, exonerated and freed of all responsibility related to Advanced Computer Services, Inc., except as stipulated in the stock purchase and sale documents of Advanced Computer Services, Inc., dated February 15, 1983, and the executed mortgage deeds on personal property and mortgage on real property, related with same.

3. That this release also applies to Computer Maintenance Corporation.

The Superior Court of Puerto Rico issued a judgment on April 12, 1983, stating: "Judgment of Dismissal because of Voluntary Dismissal of Action, pursuant to the parties' Motion of March 30, 1983, which is made a part of this Judgment, is hereby entered."

The pertinent paragraphs of the settlement agreement provided as follows:

2. Appellants transferred to Miranda all of their shares and rights in Advanced; all assets were listed in Annex A.

3. Advanced agreed to pay promptly all obligations listed in Annex B. The buyers agreed to send sellers evidence of payment of the obligations on or before their due dates. The sellers certified that the list of obligations was complete and correct as of February 14, 1983.

The certification was followed by these sentences:

---

* Of the United States Court of International Trade, sitting by designation.

If within a term of TWO (2) years there arises any pending obligation that belonged to the Corporation prior to February 1983, the Corporation shall have the right to deduct the amount of said obligation from the amount agreed on paragraph 5. Should such an incident happen, the BUYER shall advise the SELLING party in writing, and the latter shall have the right to answer said claim.

5. A debt of $46,413.90 owed to Computer Maintenance Corp., a company owned by appellants, was waived provided that Advanced pay to appellants the sum of $30,000 within two years. This debt was secured by a mortgage on real estate in the amount of $27,500 and a chattel mortgage in the amount of $5,000.

8. It was agreed that immediately on the execution of the agreement the parties would stipulate to the dismissal of the Superior Court action.

At the end of the list of accounts receivable in Annex A, there is the following: "Note: Amount in 'Over 90' column may be uncollectible."

On December 14, 1983, Miranda wrote appellants stating that he was deducting $19,902.55 from the $30,000 owed under the settlement agreement and that the debt was, therefore, reduced to $10,097.45. The claimed justification for the reduction was $1,687.63 in undisclosed liabilities of Advanced and $18,214.92 in "non-existing" accounts receivable. Appellants responded on January 3, 1984. The pertinent portion of their letter states:

ACCOUNTS PAYABALE: According to the terms of paragraph 3 that guarantees the amounts to be paid and if it is documented that they are preexisting debts, they must be accepted.

VACATIONS: Vacations owed at the signing of the contract were then current exactly as it appears in line 16, Annex B. Claims are not valid.[1]

ACCOUNTS RECEIVABLE: It was never represented that the amounts in column "over 90" were collectible. The note at the bottom of Annex A so expresses and the exclusion of all warranties in paragraph 1. No claim is justified.

## II. THE FEDERAL CASE

On August 8, 1984, appellants filed a complaint in the federal district court. Jurisdiction was based on diversity of citizenship. The pertinent allegations are: that the parties entered into an agreement in settlement of litigation whereby Advanced would pay appellants $30,000; that appellees advised appellants of their intent to deduct $19,902.55 from the $30,000 in violation of the litigation settlement agreement; and that this constituted an anticipatory breach of the settlement agreement. The relief appellants asked was payment of the $30,000 due under the settlement agreement and rescission of it, vesting ownership of Advanced in appellants.

In their answer, appellees claimed that the action was barred by the doctrine of res judicata and that appellant's remedy was to execute on the Commonwealth Court judgment. On June 25, 1985, appellants amended their complaint to state that no payment had been made on February 15, 1985, as required under the settlement agreement so that the anticipatory breach alleged in the original complaint had become an actual breach.

## III. RES JUDICATA

The district court dismissed the action "on grounds of res judicata and collateral estoppel" and this appeal ensued. In our discussion, we will use the term res judicata to mean "claim preclusion" and collateral estoppel to mean "issue preclusion." *See Fiumara v. Fireman's Fund Insurance Companies*, 746 F.2d 87, 90 n. 1 (1st Cir.1984); *Lovely v. Laliberte*, 498 F.2d 1261, 1263 (1st Cir.) *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974).

---

1. Included in the amount for undisclosed liabilities was $699.80 for vacation due an employee.

This footnote is ours.

It is now well established that local law should be used in deciding the preclusive effect to be given a local judgment in a federal court. *See, e.g., Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Capraro v. Tilcon Gammino, Inc.,* 751 F.2d 56, 58 (1st Cir.1985) (per curiam); *Fiumara v. Fireman's Fund Insurance Companies,* 746 F.2d at 91; *Roy v. City of Augusta, Maine,* 712 F.2d 1517, 1520 (1st Cir.1983).

In Puerto Rico, the doctrine of res judicata is part of the statutory law. P.R. Laws Ann. tit. 31, § 3343 (1968) provides in pertinent part:

> § 3343. **Destruction of presumptions; res judicata**
>
> Presumptions established by law may be destroyed by proof to the contrary, except in the cases in which it is expressly prohibited.
>
> Only a judgment obtained in a suit for revision shall be effective against the presumption of the truth of the res adjudicata.
>
> In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

The conclusive effect to be given a judgment of the kind in issue here is found in P.R. Laws Ann. tit. 32, § 1793 (1968):

> 2. In other cases the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding.

The Supreme Court of Puerto Rico held in *Lausell Marxuach v. Diaz de Yanez,* 103 P.R.Dec. 533, 535 (1975), that the doctrine of res judicata was part of the civil law of Puerto Rico.

■ Our res judicata analysis focuses on the pleadings brought in the Superior Court of Puerto Rico and the subsequent complaint filed in the federal district court. Suit was brought in the Puerto Rico Court on the basis of a violation of the October 1977 contract. The federal action was based on a violation of the February 1983 settlement agreement. The federal complaint refers specifically to this contract; it does not invoke or even refer to the original contract. This was a new and different cause of action.

The application of the doctrine of res judicata was discussed by the Supreme Court of Puerto Rico in *Mercado Riera v. Mercado Riera,* 100 P.R.R. 939, 950 (1972). The court quoted *Millan v. Caribe Motors Corp.,* 83 P.R.R. 474, 487 (1961):

> It has been said that the best test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions. If different evidence is required to sustain the different actions, then the causes of action are different and the former judgment is no bar to litigate the other cause of action. Freeman [*Law of Judgments,* 5th ed.], § 687.

Applying this test, we think it clear that the same evidence will not sustain both actions. The basic issue in the federal action is the meaning to be given the settlement agreement in light of the intention of the parties. The Superior Court action would have required entirely different evidence.

Moreover, Advanced and appellants had been sued by Miranda in the Commonwealth action; in the federal action, appellants have brought suit against Miranda and Advanced. The relief sought in the two actions is also different. In the Superior Court action, Miranda asked that de-

fendants be ordered to render accounts, deliver the shares of stock and pay the damages caused. In the federal action, appellants asked that the $30,000 allegedly due under the settlement be paid, and for rescission of the settlement agreement reverting ownership of Advanced in them. While these facts do not, by themselves, establish the existence of different claims, they highlight what the pleadings clearly show: the federal case and the Superior Court case center on different disputes calling for separate and distinct evidence.

In *Futura Development Corporation v. Centex Corporation*, 761 F.2d 33, 42–46 (1st Cir.) *cert. denied*, —— U.S. ——, 106 S.Ct. 147, 88 L.Ed.2d 121 (1985), we analyzed the law in Puerto Rico on res judicata and held that under the facts of that case, the doctrine did apply. We found it difficult in *Futura* to find that a fraud claim in the federal court was distinct from that of an earlier Superior Court action because the federal action, except for the fraud claim, tracked the language of the complaint in the Superior Court. *Id.* at 45. A further factor in applying res judicata was that the damages sought in the federal action were in exactly the same amount as the damages previously sought in the Superior Court. *Id.* The contrast between the two sets of pleadings in *Futura* and those now before us is evident.

There is, however, one aspect of Puerto Rico law, not discussed below or briefed by the parties, that requires comment. P.R. Laws Ann. tit. 31, § 4827 (1968) provides: "A compromise has, with regard to the parties, the same authority as res adjudicata; but summary proceedings shall not be proper except when the fulfilment of a judicial compromise is in question." Compromise is defined in P.R. Laws Ann. tit. 31, § 4821 (1968): "A compromise is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted."

The Puerto Rico Supreme Court has allowed an aggrieved party to sue for rescission of a compromise agreement. *Alvarado v. Bonilla*, 86 P.R.R. 464 (1962); *Riera v. Macias de Riera*, 42 P.R.R. 560 (1931).

In *Alvarado*, one of the issues in a complicated real estate case was whether the plaintiff could sue for the original debt after a compromise contract had been breached by the defendant. *Alvarado*, 86 P.R.R. at 475. In discussing this issue, the court held:

> Once said [compromise] contract had been violated, the creditor could sue for the amount of the original debt. This is so, because the noncompliance with or breach of the terms of the contract of compromise, even supposing that there was a novation, produced its resolution and consequently it ceased to exist. *Riera v. Macias de Riera*, 42 P.R.R. 560; *Heirs of Escalera v. Barreto*, 81 P.R.R. 580.

*Id.* at 475.

In the second case, *Riera v. Macias de Riera*, 42 P.R.R. 560, Riera loaned Macias de Riera $50,000, which was secured by various stock certificates. Later, Macias de Riera offered two compromise proposals. Riera accepted the first one which was mainly a stock transfer. After the defendant refused to deliver the stock, Riera sued for the original debt of $50,000. After determining that a compromise contract had been entered into and that Macias de Riera did not perform on the compromise for a sufficient reason, the Puerto Rico Supreme Court held:

> In accordance with the above provisions, as the plaintiff had fulfilled his obligation embodied in the compromise agreement, and as the debtor had failed to perform hers, the former was entitled to consider said agreement as rescinded.... Therefore, Don Olegario Riera was entitled in this case to treat the compromise agreement as rescinded and to bring his action for the recovery of the $50,000. Once such agreement is rescinded, the compromise ceases to exist and the novation which would have

arisen therefrom had the agreement subsisted must also fail.

*Id.* at 571.

Neither case discussed the effect to be given § 4827. We are not sure, therefore, whether § 4827 applies to the case before us. We are sure, however, that § 4827 aside, the Puerto Rico doctrine of res judicata does not bar the federal action. Because the applicability of § 4827 has not been briefed by the parties—and because the district court is familiar with Puerto Rico law—we think it best that the district court address the issue on remand before we reach a conclusion on the question.

## IV.  COLLATERAL ESTOPPEL

■ Nor is collateral estoppel (issue preclusion) a bar. As the United States Supreme Court teaches, the defense of collateral estoppel should not apply unless there has been a "full and fair opportunity" to litigate the issue in a prior hearing. *Allen v. McCurry,* 449 U.S. at 95, 101 S.Ct. at 415; *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328, 91 S.Ct. 1434, 1442, 28 L.Ed.2d 788 (1971). There never was a "full and fair opportunity" to litigate the interpretation of the compromise agreement since the dispute over its interpretation did not arise until long after the Commonwealth case had been settled.

We also note in passing that neither the absention doctrine of *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), nor of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), applies here.

Although it may have been preferable for the parties to return to the Puerto Rico Superior Court, there can be no doubt that the district court has diversity jurisdiction over the cause of action and the parties. Unless the statute giving a compromise agreement res judicata effect dictates otherwise, this case must be tried in the federal district court. On remand, the district court should first determine the effect of P.R. Laws Ann. tit. 31, § 4827.

*Reversed and Remanded.*