**In re EL SAN JUAN HOTEL CORPORATION, Debtor.**

**Appeal of Marshall J. KAGAN.**

**No. 87–1369.**

United States Court of Appeals, First Circuit.

Submitted Nov. 6, 1987.

Decided March 2, 1988.

Rehearing and Rehearing En Banc Denied March 29, 1988.

Wallace Vazquez Sanabria, Hato Rey, P.R., on brief, for appellant.

Hector R. Cuprill, Ponce, P.R., and A. Santiago Villalonga, Hato Rey, P.R., on brief, for appellee.

Before COFFIN, TORRUELLA and SELYA, Circuit Judges.

COFFIN, Circuit Judge.

This case requires us to decide whether the second of two lawsuits filed on behalf of the same bankrupt estate by different representatives properly was dismissed on the ground of res judicata. The question is particularly puzzling because the second representative filed his action even though the bankruptcy court had stayed the order allowing the representative, a non-trustee, to file suit for the estate. After considering both bankruptcy and res judicata law, we affirm.

I.

In 1980, the San Juan Hotel Corporation filed a petition for reorganization under Chapter 11 of the Bankruptcy Act, and Hector Rodriguez–Estrada (Rodriguez) was appointed trustee. Rodriguez served as operating trustee until 1983, when, amid allegations of wrongdoing by him,[1] the reorga-

---

1. Rodriguez, *inter alia,* allegedly hired unnecessary outside professional consultants without bankruptcy court approval, paying them substantial sums; ordered that $15,000 be used to redecorate a hotel suite reserved for his personal use; failed to file a required reorganization plan; signed labor agreements granting unwarranted salary increases; failed to reduce the number of employees to an appropriate level; provoked a labor strike; and failed to make

nization proceeding was converted into a liquidation under Chapter 7 and the creditors voted to remove Rodriguez from his position. Hans Lopez Stubbe (Lopez) was then appointed trustee.

Marshall Kagan, the appellant in this case and former comptroller of the hotel, was a primary voice in criticizing Rodriguez, and actively sought Rodriguez' removal from the trustee position. When the new trustee failed to initiate legal action against Rodriguez, Kagan apparently was influential in convincing the United States Attorney to seek permission to file suit against Rodriguez on behalf of the bankrupt estate. The bankruptcy court authorized the United States to sue on April 17, 1985.[2] Less than two months later, and after the U.S. lawsuit already had been filed, another bankruptcy judge, relying on the earlier authorization, granted Kagan[3] permission to file a lawsuit on behalf of the bankrupt estate against Rodriguez and Charles A. Cuprill–Hernandez (Cuprill), Rodriguez' attorney during his tenure as trustee. The new trustee, Lopez, had consented to the United States's suit, provided it did not cost the estate any money. However, Lopez opposed Kagan's suit, arguing, *inter alia*, that Kagan's claims were unsubstantiated and that the action would be duplicative in light of the U.S. action.

Both Rodriguez and Cuprill appealed the bankruptcy court's decision to allow Kagan's suit, and Cuprill also sought a stay, pending appeal, of the order permitting suit. The stay was granted on June 27, 1985, but Kagan nevertheless filed a complaint on October 7, 1985.

On March 4, 1987, the district court issued its decision in the action filed by the United States against Rodriguez, which we shall term *San Juan Hotel I.* Although the complaint in that case focused on Rodriguez' failures with regard to the estate's federal tax obligations, the district court's opinion addressed wide-ranging allegations of improprieties by Rodriguez. The district court found that Rodriguez willfully breached his statutory duties to the estate and personally benefited from the continued operation of the hotel under Chapter 11. *In re San Juan Hotel,* 71 B.R. 413 (D.P.R.1987). The court listed a series of specific instances in which Rodriguez' actions depleted the estate, and it found Rodriguez liable for an amount exceeding $3 million.

Two weeks later, on March 17, 1987, the district court dismissed Kagan's suit, holding that the claims "are identical to those raised, heard, and adjudicated" in the earlier lawsuit, and therefore were barred by the doctrine of res judicata. At the same time, Cuprill's and Rodriguez' appeals of the order allowing Kagan's suit were dismissed as moot.

Kagan now challenges the district court's conclusion that the doctrine of res judicata bars his action on behalf of the estate. He claims that res judicata is inapplicable because Cuprill was not a party in *San Juan Hotel I,* and there was therefore no identity of parties. Under Puerto Rico law, he claims, res judicata may be invoked only if the parties in the two lawsuits are identical.

## II.

■ Our first inclination is to dismiss Kagan's action as a nullity. The trustee is the representative of the bankrupt estate, 11 U.S.C. § 323(a), and as such has the authority to sue and be sued on behalf of the estate, *id.* at § 323(b). *See* Bankruptcy Rule 6009 (trustee may, with or without court approval, defend any pending action

---

timely tax payments to the federal and Commonwealth governments, incurring substantial penalties.

2. The court apparently gave the United States permission to file suit on behalf of the estate because of the Internal Revenue Service's status as a creditor. Rodriguez allegedly failed to pay federal taxes on time, and the estate therefore owed substantial penalties to the IRS.

3. It appears that the court believed Kagan could be given standing to sue on behalf of the estate because of his status as a creditor. His creditor status apparently stemmed from a wrongful termination lawsuit against Rodriguez that was filed after the former trustee fired Kagan from his job as comptroller in December 1982.

by or against debtor, or commence and prosecute any action in behalf of the estate). We have been shown no authority allowing a court, over the trustee's objection, to reassign the power to sue on behalf of the estate, at least in the absence of an abuse of discretion by the trustee. *See* 2 *Collier on Bankruptcy*, 15th Ed. § 323.02, at 323-4-9 (1987); *see also Matter of Milam*, 37 B.R. 865, 868-69 (Bankr.N.D.Ga. 1984) (trustee, and not creditors, has authority to file action regarding alleged fraudulent conveyance by debtor; creditor who believes trustee has failed to carry out duties properly may ask court to have trustee removed for cause under 11 U.S.C. § 324). We need not decide, however, whether the bankruptcy court overstepped its statutory authority when it granted Kagan the right to sue. That court subsequently stayed its order, thus withdrawing, at least temporarily, Kagan's license to be in court on behalf of the San Juan Hotel. In those circumstances, we see no reason to consider Kagan's action any further. Without the court's permission, Kagan had no standing to sue on behalf of the estate, and we believe his action properly could have been dismissed on that basis.[4]

Despite Kagan's dubious position, however, the district court proceeded past the standing question and ruled on other grounds, perhaps because it thought that res judicata obviously was applicable and that a dismissal on that ground would bring a quick end to the litigation. We believe it appropriate to review the res judicata question at this time because our failure to do so would leave this already procedurally confused litigation in an even more chaotic state. If we were to dismiss the suit only because of the bankruptcy court's stay of the order allowing Kagan to file the action, that court theoretically could reactivate its permission. The stay was granted only pending Rodriguez's and Cuprill's appeals of the original order granting Kagan permission to sue. Those appeals now have been dismissed as moot. Presumably, the bankruptcy court again could allow Kagan to sue, which could be followed by a renewed appeal by Rodriguez and Cuprill, which in turn could produce a stay. If Kagan complied with the order and withheld from suing on this new round, the eventual result could be a district court decision on whether it was proper for the bankruptcy court to grant Kagan the right to sue on behalf of the estate, which then undoubtedly would be appealed to this court. We think the interests of justice and judicial economy are best served by disposing of this case at this time. We therefore now turn to the res judicata question.[5]

### III.

■ We note first that federal, and not Commonwealth law, controls in determining the res judicata or collateral estoppel effects of a federal court decision on a subsequent federal court suit.[6] *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971) (" 'It has been held in non-diversity cases, since *Erie R. Co. v. Tompkins*, that the federal courts will apply their own rule of *res judicata*.' ") (quoting *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853,

---

**4.** For this reason, we do not consider Kagan's separate motion seeking a summary reversal of the district court's dismissal of his case. Kagan claims that the district court improperly failed to give him notice of its intention to dismiss the case on the ground of res judicata, and improperly denied him an opportunity to be heard in opposition. Although we decline to address whether the district court should have given Kagan notice and time to respond, we do note that "[a] district court should proceed with great caution when dismissing a claim *sua sponte.*" *Boddie v. American Broadcasting Cos.*, 731 F.2d 333, 336 n. 2 (6th Cir.1984).

**5.** We use the term res judicata to mean "claim preclusion" and collateral estoppel to mean "issue preclusion." *Oliveras v. Miranda Lopo*, 800 F.2d 3, 5 (1st Cir.1986).

**6.** Both lawsuits invoked jurisdiction under 28 U.S.C. § 1471, which has now been omitted from the United States Code, and under 28 U.S.C. § 1334, both of which specify that district courts have original and exclusive jurisdiction over Title 11 matters. Kagan's action also invoked 28 U.S.C. § 1473, which related to venue under Title 11, and which also has been omitted from the code.

856, 90 L.Ed. 970 (1946)); *In re Matter of Energy Co-Op., Inc.*, 814 F.2d 1226, 1230 (7th Cir.1987); Restatement (Second) of Judgments § 87 (1982); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4466, at 618 (1981) (hereinafter *Wright & Miller*). *Cf. Oliveras v. Miranda Lopo*, 800 F.2d 3 (1st Cir.1986) (local law used to determine preclusive effect of local judgment in federal court).

We also recognize that this case differs somewhat from the typical res judicata and collateral estoppel controversy. For example, we have assumed for purposes of this case that the plaintiff in both actions was identical—the estate of the San Juan Hotel —even though *San Juan Hotel I* was filed by the United States and *San Juan Hotel II* was filed by Kagan. Notwithstanding this difference, both cases were filed on behalf of the bankrupt estate, and Kagan does not argue that we should treat the matters as involving different plaintiffs. His theory is that identity of parties is lacking because *Cuprill* was not a *defendant* in *San Juan Hotel I.*

■ The specific question before us, therefore, is whether Cuprill, a non-party to *San Juan Hotel I,* may use that action as a defense to the later, Kagan-initiated suit. In the jargon of res judicata and collateral estoppel law, the question is whether a form of "nonmutual claim preclusion" is appropriate, i.e. whether a party not involved in the earlier action may deflect this lawsuit because he should have been, but was not, included in the earlier suit.[7]

Other courts have concluded that a version of claim preclusion is appropriate in these circumstances if the new defendants have a close and significant relationship with the original defendants, such as when the new defendants were named as conspir-

ators in the first proceeding but were not joined in the action. *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir.1972) (new defendants, some of whom named but not joined in original complaint, allegedly co-conspirators of original defendants); *Fowler v. Wolff*, 479 F.2d 338, 340 (8th Cir.1973) (in case alleging constitutional violations related to parole from prison, new defendants were prison officials while previous defendants were parole and other prison officials); *Cambist Films, Inc. v. Duggan*, 475 F.2d 887, 890 (3d Cir.1973) (concurring opinion) (new defendants were detectives directly involved in allegedly unconstitutional seizure while original defendants included chief of detectives for the county); *Poster Exchange, Inc. v. National Screen Service Corp.*, 517 F.2d 117, 122–23 (5th Cir.1975) (new defendant named as conspirator in first proceeding but not joined in action); *McLaughlin v. Bradlee*, 599 F.Supp. 839, 847–48 (D.D.C.1984) (new defendant allegedly participated in same conspiracy as defendants in prior actions), *aff'd*, 803 F.2d 1197 (D.C.Cir.1986); *Betances v. Quiros*, 603 F.Supp. 201, 205–07 (D.P.R.1985) (new defendant allegedly participated in same conspiracy as original defendants). *See also* 18 *Wright & Miller* § 4464, at 587. Another formulation of this idea is that preclusion is appropriate "only if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance," 18 *Wright & Miller* § 4464, at 589.[8]

We find this authority persuasive here. *San Juan Hotel I* thoroughly explored various ways in which Rodriguez financially harmed the debtor estate. With the exception of one allegation, Kagan's amended complaint in *San Juan Hotel II* either ac-

---

**7.** What makes this "nonmutual" is that the plaintiff, the estate, could not rely on the earlier action as an estoppel *against* Cuprill. *See Wright & Miller* § 4463.

**8.** These approaches to nonmutual claim preclusion are consistent with the standard usually applied to determine whether a prior lawsuit should be given preclusive effect in a second action involving at least one different party.

That standard is whether the party against whom an estoppel is asserted had a full and fair opportunity for judicial resolution of the same issue. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971); *Fiumara v. Fireman's Fund Insurance Cos.*, 746 F.2d 87, 92 (1st Cir.1984).

cuses Cuprill of jointly causing this harm or lays blame only on Rodriguez.[9] With regard to these allegedly joint harms, it is evident that Cuprill, as the co-perpetrator, shared a significant relationship with Rodriguez. We therefore believe that the court's decision on those matters in *San Juan I* precludes Kagan's attempt to relitigate them with regard to Cuprill's liability. The tale of misdeeds against the estate is long, and we see no good reason for allowing a second telling of it. Cuprill could have been, and should have been, included in *San Juan Hotel I* if he shared culpability for the wrongdoing alleged there.

The only allegation in Kagan's amended complaint directed solely at Cuprill is that, while acting as attorney for Rodriguez, he charged the debtor estate at excessive rates for services performed by clerical personnel and inexperienced lawyers. Although excessive legal fees charged to the estate seem, in one respect, indistinguishable from the catalogue of other allegedly improper costs imposed on the debtor hotel, they are different because they do not involve the *trustee*'s mismanagement of the estate—the claim at the heart of *San Juan Hotel I.* Kagan does not allege that Rodriguez conspired with Cuprill regarding legal fees and knowingly paid an excessive rate. We therefore conclude that Cuprill did not share a significant relationship with Rodriguez in relation to this allegation and that res judicata therefore does not bar that one aspect of *San Juan Hotel II.* Nevertheless, as we discussed *supra*, Kagan lacked standing to bring any claim against Cuprill, and so this aspect of *San Juan Hotel II* also was properly dismissed.[10]

We therefore hold that, under principles of bankruptcy law, this case should be dismissed because Kagan lacks standing in light of the bankruptcy court's stay order. Moreover, the doctrine of res judicata bars litigation of all but one of the allegations contained in Kagan's complaint.

*The judgment of the district court dismissing the case is affirmed.*

---

**9.** The specific wrongdoings described in *San Juan Hotel I* differ in some respects from the allegations in Kagan's amended complaint, but these differences are irrelevant for our purposes. What is critical is that both actions purported to address the various ways in which Rodriguez, or Rodriguez and Cuprill jointly, caused financial harm to the estate. To the extent that the second action alleged specific misdeeds not included in the first one, those additional allegations clearly are barred by the doctrine of res judicata. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 814 F.2d 844, 846 (1st Cir.1987) (Res judicata " 'gen-

erally binds parties from litigating or relitigating any issue that was or could have been litigated in a prior adjudication and prevents claim splitting.' ") (citation omitted).

**10.** We offer no opinion on whether the estate has a viable cause of action, under contract principles or otherwise, against Cuprill for charging excessive fees. *See, e.g., Matter of Wilson,* 694 F.2d 236 (11th Cir.1982) (during bankruptcy proceeding trustee challenged reasonableness of debtor's attorney's fees); 11 U.S.C. § 329.