**TINGLEY SYSTEMS, INC., Plaintiff,**

v.

**CSC CONSULTING, INC., f/k/a CSC Partners, Inc., Defendant.**

**Civil Action No. 95–10284–RCL.**

United States District Court, D. Massachusetts.

March 19, 1996.

G. Donovan Conwell, Jr., Guillermo A. Pernas, Jr., Brent J. Gibbs, Fowler, White, Gillen, Tampa, FL, Laurence H. Reece, III, Heidlage & Reece, Boston, MA, for Tingley Systems, Inc.

Andrew C. Griesinger, Choate, Hall & Stewart, Boston, MA, Michael A. Walsh, Choate, Hall & Stewart, Boston, MA, for CSC Consulting, Inc.

## MEMORANDUM AND ORDER

LINDSAY, District Judge.

This is a procedurally-complex intellectual property case in which the plaintiff, Tingley Systems, Inc. ("Tingley" or "TSI"), asserts that the defendant, CSC Consulting, Inc.

("CSC") has misappropriated Tingley's trade secrets and has infringed Tingley's copyrights in certain computer software. Tingley also claims that CSC conspired with Bay State HMO Management, Inc. and certain entities affiliated with the latter[1] to misappropriate Tingley's trade secrets; that CSC aided and abetted Bay State's misappropriation of Tingley's trade secrets; and that CSC materially contributed to Bay State's infringement of Tingley's copyrights. Finally, Tingley makes state law claims against CSC arising out of the same alleged misappropriation of and copying of Tingley's copyrighted computer software.

This case is the only remaining one of three companion cases that were consolidated pursuant to an order by Magistrate Judge Marianne B. Bowler in the summer of 1995. On motion of the parties, this court dismissed with prejudice the other two cases (which themselves had previously been consolidated), *Bay State HMO Management, Inc. v. Tingley Systems, Inc.*, 93–11283–RCL, and *Tingley Systems, Inc. v. Bay State Health Management, Inc.*, 93–12230–RCL (the "Bay State cases"), pursuant to a settlement agreement between Tingley and Bay State.

In the present motion, CSC argues for summary judgment on the ground that the doctrine of res judicata bars Tingley's claims against CSC in this action. CSC's argument is that (1) the claims in this action are identical to the claims against Bay State; (2) this court's dismissal of the Bay State cases is a final judgment on the merits within the meaning of the res judicata doctrine, and (3) that CSC and Bay State are privies within the meaning of the res judicata doctrine.

Because this court agrees with CSC's analysis and concludes that res judicata bars Tingley's claim, the court grants CSC's motion for summary judgment.

## I. *Standard: Motion for Summary Judgment*

Under Fed.R.Civ.P. 56(c), a court "may grant summary judgment 'if all the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *McCarthy v. Northwest Airlines*, 56 F.3d 313, 314 (1st Cir.1995), *quoting* Fed.R.Civ.P. 56(c).

The mechanics of a summary judgment motion are as follows:

Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial-worthy issue exists. *See National Amusements [v. Town of Dedham]*, 43 F.3d [731,] 735 [ (1st Cir.1995), *cert. denied*, — U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995) ]. As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Garside [v. Osco Drug, Inc.]* 895 F.2d [46,] 48 [ (1st Cir.1990) ]. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. *See [United States v.] One Parcel [of Real Property (Great Harbor Neck, New Shoreham, R.I.) ]*, 960 F.2d [200,] 204 [ (1st Cir. 1992) ]. By like token, "genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party ..." *Id.*

When all is said and done, the trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs–Ryan [v. Smith ]*, 904 F.2d [112,] 115 [ (1st Cir.1990) ], but paying no heed to "conclusory allegations, improbable inferences,

---

**1.** The affiliated entities are Bay State Health Management, Inc. and Blue Cross and Blue Shield of Massachusetts, Inc. Bay State HMO Management, Inc. and its affiliated entities will be referred to collectively as "Bay State" throughout this memorandum and order.

[or] unsupported speculation," *Medina–Munoz [v. R.J. Reynolds Tobacco Co.]*, 896 F.2d [5,] 8 [ (1st Cir.1990) ]. If no genuine issue of material fact emerges, then the motion for summary judgment may be granted. *McCarthy*, 56 F.3d at 315.

## II. *Facts/Procedural History*

Read in the light most hospitable to Tingley, the record in this case reveals the following.

Tingley makes computer software for health maintenance organizations. It licensed its software to Bay State, and Bay State allegedly used that software to create three new software packages, "Point of Sale" ("POS"), "Decision Support System," ("DSS"), and "BayStar." Tingley claims that, by using the source code, file structures, sequence, field structures, data attributes, screens, and file keys of Tingley's software package, Bay State infringed Tingley's intellectual property rights.

CSC is a consultant hired by Bay State to help develop POS, DSS and BayStar. The parties to the Bay State cases were Tingley and Bay State. (Bay State, warned that Tingley was about to sue Bay State in Florida, sued Tingley in this court; Tingley then filed a suit against Bay State in the Middle District of Florida; Bay State successfully moved for transfer of the Florida case to this district and for consolidation of the two cases.) Tingley sued CSC in this separate action after discovery in the Bay State cases indicated that CSC had been involved in developing the allegedly-infringing programs. Tingley then moved, in the summer of 1995, to consolidate this case with the Bay State cases. In an order dated July 11, 1995, Magistrate Judge Bowler granted that motion. The three cases (the two already-consolidated Bay State cases and this case) were then consolidated.

Tingley's claims against CSC parallel its claims against Bay State and arise from the same underlying circumstances. Both parties have asserted this at different times— Tingley in support of its motion to consolidate the Bay State cases with this case, and CSC in its memorandum in support of the present motion. Magistrate Judge Bowler's order granting consolidation noted that "both [sic] actions stem[med] from the same set of factual circumstances." July 11, 1995 Order and Memorandum Consolidating Cases at 5.

After the consolidation of the cases, Tingley and Bay State discussed settlement. CSC declined an invitation to be involved in these settlement discussions. Tingley and Bay State concluded a settlement agreement which "specifically acknowledges TSI's intent and right to continue its suit against CSC," TSI's Opposition to CSC's Motion for Summary Judgment ("Opposition Memorandum") at 5, and makes arrangements that bear out that intent (e.g., allowing Tingley to keep certain Bay State documents that are necessary to the CSC litigation). The settlement agreement specifically states Tingley's refusal to release any claims Tingley has against CSC and contemplates that the CSC action will continue.

Pursuant to the settlement agreement, in September, 1995, Tingley and Bay State filed a "Stipulation and Order of Dismissal" in the Bay State cases, pursuant to Fed.R.Civ.P. 41(a). In accordance with this filing, the court ordered dismissal with prejudice of those suits.

## III. *Analysis: Application Res Judicata*

### A. *Effect of Consolidation*

Under the law of this Circuit, cases "consolidated for purposes of convenience and judicial efficiency ... retain their separate identity and judgments rendered in each individual action are ... final judgments within the meaning of 28 U.S.C. § 1291." *Fed. Deposit Ins. Corp. v. Caledonia Inv. Corp.*, 862 F.2d 378, 381 (1st Cir.1988), *citing In re Massachusetts Helicopter Airlines, Inc.*, 469 F.2d 439 (1st Cir.1972) (citation omitted). Thus consolidated cases remain "separate entities," though consolidated. *Albert v. Maine Cent. R.R. Co.*, 898 F.2d 5, 7 (1st Cir.1990), *cert. granted sub nom Erickson v. Maine Cent. R.R. Co.*, 498 U.S. 807, 111 S.Ct. 38, 112 L.Ed.2d 15. For the purposes of this motion, then, the court must treat the consolidated cases as different cases.

### B. Res Judicata

Federal res judicata law applies to this case. *Blonder–Tongue Lab., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971); *Apparel Art Int'l, Inc. v. Amertex Enter. Ltd.*, 48 F.3d 576, 582 (1st Cir.1995) ("Federal law principles of res judicata govern the preclusive effect of a prior federal court's judgment on a subsequent action brought in federal court," *citing In re El San Juan Hotel Corp.*, 841 F.2d 6, 9 (1st Cir.1988)).

The res judicata doctrine under federal law holds that

> a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94 [101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (parallel citations omitted); *Gonzalez v. Banco Central Corp.*, 27 F.3d 751, 755 (1st Cir.1994). The policy rationale behind res judicata is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen*, 449 U.S. at 94 [101 S.Ct. at 415] (parallel citation omitted). Res judicata, therefore, prevents plaintiffs from splitting their claims by providing a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit. *See Kale [v. Combined Ins. Co. of America*,] 924 F.2d [1161], 1166 [ (1st Cir. 1991), *cert. denied*, 502 U.S. 816, 112 S.Ct. 69, 116 L.Ed.2d 44].

*Apparel Art*, 48 F.3d at 583.

There is a three-part test to determine "whether res judicata precludes litigation of a party's claims." *Id.* The elements are: "1) a final judgment on the merits in an earlier suit; 2) sufficient identicality between the causes of action asserted in the earlier and later suits; and 3) sufficient identicality between the parties in the two suits." *Id.*, *citing Gonzalez*, 27 F.3d at 755; *Kale*, 924 F.2d at 1165.

The court will address these issues in turn.

### 1. Final Judgment on the Merits

CSC argues that the dismissal with prejudice of Tingley's claims in the Bay State cases constitutes a "final judgment on the merits" for the purposes of res judicata. Defendant's Memorandum at 6. The court agrees. *Capraro v. Tilcon Gammino, Inc.*, 751 F.2d 56 (1st Cir.1985) (addressing res judicata effect, under Rhode Island law, of previous dismissal with prejudice; assumption that Rhode Island law "does not in connection with principles of res judicata differ from ... the federal law," *id.* at 58). *See Langton v. Hogan*, 71 F.3d 930 (1st Cir.1995) (a judgment "that is entered with prejudice under the terms of a settlement ... bars a second suit on the same claim or cause of action." *Id.* at 935.); *Golden v. Barenborg*, 53 F.3d 866 (7th Cir.1995); *Samuels v. Northern Telecom, Inc.*, 942 F.2d 834 (2d Cir.1991); *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498 (11th Cir.1990); *Brooks v. Barbour Energy Corp.*, 804 F.2d 1144 (10th Cir.1986); *see also* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2367 at 319–20 (1995 ed.) ("Dismissal with prejudice, unless the court has made some other provision, is subject to the usual rules of res judicata and is effective not only on the immediate parties but also on their privies." *Id.*) Thus, the first part of the res judicata test is met.

### 2. Identity of Claims

The First Circuit follows a "transactional approach" in determining whether there is sufficient identity between claims in separate cases for res judicata purposes.

> Under this approach, a cause of action is defined as a set of facts which can be characterized as a single transaction or a series of related transactions. The cause of action, therefore, is a transaction that is identified by a common nucleus of operative facts. Although a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action. *See, e.g., Gonzalez*, 27 F.3d at 755; *Kale*, 924 F.2d at 1166.

*Apparel Art,* 48 F.3d at 583–84. The question for the court, then, is whether the facts of this case and the Bay State cases "arise from the same nucleus of operative facts." *Id.* at 584.

Factors which the court may consider in making this determination include:

1) whether the facts are related in time, space, origin or motivation; 2) whether the facts form a convenient trial unit; and 3) whether treating the facts as a unit conforms to the parties' expectations. [*Gonzalez,* 27 F.3d at 756.] Additionally, when defining the contours of the common nucleus of operative facts, it is often helpful to consider the nature of the injury for which the litigant seeks to recover. *See id.*

*Apparel Art,* 48 F.3d at 584.

In this case, consideration of the three numbered factors argues in favor of the court's concluding that there is a single "nucleus of operative facts." The facts are not only "related in time, space, origin or motivation," but are fundamentally the same facts: Bay State and CSC, working together, are alleged to have used the same proprietary intellectual property, belonging to Tingley, to create the same three allegedly-infringing computer programs. And, as found by Magistrate Judge Bowler in her analysis of whether to consolidate the cases for trial, the facts "form a convenient trial unit." Finally, the parties expected—as evidenced by their coordinated discovery efforts[2]—that the facts would be treated as a unit. In addition, as noted above, each party to this suit has at some time argued that the claims in these two cases do arise from the same transaction.

What is left is consideration of the additional factor of the nature of the injury for which recovery is sought—a factor the First Circuit describes as "helpful" in "defining the contours of the common nucleus of facts" *Apparel Art,* 48 F.3d at 584. In this case, the alleged injury, theft of intellectual property and related claims, is the same in both cases.

Thus, the second res judicata element exists in this case.

### 3. Identity of Parties

Inquiry under this part of the test focuses on whether CSC and Bay State were in privity such that it is appropriate that res judicata operate to bar, in this case, claims originally made by CSC against Bay State in the Bay State cases. The law of privity is not a model of clarity. Various phrases have been used to describe the relationship necessary to establish privity: "substantial control" by the nonparty of the party's involvement in the initial litigation, *Gonzalez,* 27 F.3d. at 758; permitting a party to the initial litigation to function as the "de facto representative" of the later party, *id.;* and a "close and significant relationship" between the original defendants and the later party, *In Re El San Juan Hotel Corp.,* 841 F.2d 6, 10 (1st Cir.1988).

Of these tests, the one set forth in *San Juan Hotel* is most appropriately applied to the case at bar. In that case, the United States, as a creditor of an estate in bankruptcy, filed a claim against the former trustee of the estate, Hector Rodriguez–Estrada ("Rodriguez"), alleging that improprieties on the part of Rodriguez had harmed the estate. Thereafter Marshall Kagan ("Kagan"), another creditor, also sued Rodriguez for improprieties in the latter's administration of the estate. In this second suit, Kagan sued Rodriguez and Charles A. Cuprill–Hernandez ("Cuprill"), Rodriguez' attorney during the latter's tenure as trustee of the estate. Cuprill was alleged by Kagan, among other things, to have caused harm to the estate jointly with Rodriguez. The trial court determined in the first suit that Rodriguez had committed the defalcations and other wrongs alleged by the United States and awarded damages. The court then dismissed Kagan's suit on the ground that that suit was barred by the doctrine of res judicata. Kagan appealed, arguing that Cuprill was not a party to the first suit and that, therefore there was no identity of parties. The First Circuit

---

**2.** Even before CSC was sued, it produced its employees for deposition in the Bay State cases; in addition, much of the discovery material ap- plies to both Tingley's claims against Bay State and its claims against CSC.

affirmed the dismissal,[3] noting that the underlying transaction alleged in the two cases was the same, and that "Cuprill, as a co-perpetrator, shared a significant relationship with Rodriguez." *Id.* at 11. Under these circumstances, the court held that there was privity between Rodriguez and Cuprill, at least as to those harms they were jointly alleged to have caused. CSC's position in this case is analogous to that of Cuprill in *San Juan Hotel.* That is, CSC is alleged to be a co-perpetrator, with Bay State, of jointly-caused harms to Tingley.

Tingley asserts that this case is distinguishable from *San Juan Hotel* because that case involved vicarious or derivative liability of Rodriguez for the actions of a third party (in that case, Cuprill), while in this case each of Bay State and CSC is individually liable for its own actions. That assertion cannot stand in the face of the *San Juan Hotel* decision itself. The court in that case described the amended complaint in the second case as "accus[ing] Cuprill of jointly causing this harm" with Rodriguez. *San Juan Hotel,* 841 F.2d at 10–11. The court went on to note, "What is critical is that both actions purported to address the various ways in which Rodriguez, *or Rodriguez and Cuprill jointly,* caused financial harm to the estate." *Id.* at 11 n. 9 (emphasis added). The finding of privity in that case, and the court's decision that res judicata barred the second claim were not based, as Tingley claims, on any theory of vicarious or derivative liability.[4]

---

3. The First Circuit affirmed the decision on res judicata grounds only insofar as the claims in Kagan suit were based harms on jointly caused by Rodriguez and Cuprill. The court determined that res judicata did not bar claims made against Cuprill for his acts alone. The decision of the trial court to dismiss Kagan's suit was affirmed in whole, however, because the First Circuit held that Kagan lacked standing to bring his suit.

4. Both parties devote extensive energy to discussing an Eleventh Circuit case, *Citibank, N.A. v. Data Lease Financial Corp.,* 904 F.2d 1498 (11th Cir.1990). There the res judicata issue is discussed in a context in which the identity of the parties is based on the derivative liability of one party for the acts or omissions of another. It is no surprise that the parties differ as to what the case means and as to what its implications might be for this case. The facts of *Citibank* are similar to the facts in this case, but because this case is controlled by *San Juan Hotel, Citibank* has limit-

## IV. Conclusion

■ For the reasons set forth above, the court concludes that the three requisites for res judicata are met in this case. The application of res judicata to bar the plaintiff's claim seems, however, to be a harsh result, given that it allows one defendant the benefit of another defendant's bargain with the plaintiff. But harsh though this outcome may seem, the court is constrained by the applicable law to reach it. The parties in the Bay State cases asked for, and received, a dismissal with prejudice of Tingley's claim against Bay State. By selecting this form for the dismissal of that suit, they dictated the disposition of the present motion. The circuits, after all, speak with one voice that a dismissal with prejudice, even if it arises from a stipulation or consent, is a final judgment on the merits. The other elements of res judicata—identity of claims and of parties—are likewise met. Therefore, the court GRANTS the defendant's motion for summary judgment.

■ One final matter: Tingley (as a hedge against a ruling unfavorable to it on the present motion) filed in the Bay States cases a Motion for Limited Relief from Judgment, in which it requested relief under Rule 60(b) from the judgment of dismissal in those cases. Tingley made its motion under Rule 60(b)(6), which gives the court power to relieve a party from judgment "for any other

---

ed value in the resolution of the issues presented here.

Tingley also relies on the *Restatement (Second) of Judgments* for the proposition that "[a] judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor." *Restatement (Second) of Judgments* § 49 (1982). While the *Restatement* appears to reflect the law in Massachusetts, it does not state the law of the First Circuit, at least insofar as that law pertains to the res judicata effect of a judgment as to claims against one co-perpetrator of allegedly joint harms to a plaintiff; and, as noted in section III B of this memorandum and order, federal res judicata law governs this case. *See Hermes Automation Tech. v. Hyundai Elec. Indus. Co., Ltd.,* 915 F.2d 739, 751–52 (1st Cir. 1990).

reason [than those stated in Rules 60(b)(1)–(5)] justifying relief," Fed.R.Civ.P. 60(b)(6).

This court has determined that Rule 60(b)(6) is not available to Tingley with respect to the judgment in the Bay State cases. Application of this rule is limited to situations in which none of the other subsections of Rule 60(b) apply. As Wright and Miller have observed, "[T]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made." 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2864 (1995). See also *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Chang v. Smith,* 778 F.2d 83 (1st Cir.1985). Rule 60(b)(6), then, is not a source of remedy for Tingley.

The appropriate basis for considering Tingley's motion for limited relief from judgment is found in Rule 60(b)(1). That rule authorizes the court to give relief from judgment in cases of "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). Even under this lower standard, however, Tingley's claim must fail. Where a party takes a voluntary action that compromises or extinguishes a claim, that party may not have relief from judgment under Rule 60(b)(1) merely because the party—as here—misapprehends the consequences of the action taken. *See* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, § 2858 and cases cited therein.

For the foregoing reasons, Tingley's Motion for Limited Relief from Judgment is DENIED. The clerk is directed to make an appropriate notation of this ruling in the Bay State cases.

The motion of CSC for summary judgment having been granted and the motion of Tingley for limited relief from judgment having been denied, the court dismisses the complaint in these cases and orders that judgment enter for CSC.

It is so ordered.