**In re COLONIAL MORTGAGE BANKERS CORP., Debtor.**

**Hans LÓPEZ STUBBE, in his capacity as Trustee of Colonial Mortgage Bankers Corp., Plaintiff–Appellee,**

**v.**

**Milton J. RÚA, a/k/a Milton Rúa Cabrer, a/k/a Milton Rúa, Jr.; Denise de Mauret, a/k/a Denise de Mauret de Rúa, and their legal conjugal partnership, Defendants–Appellants.**

Civ. No. RLA 89–1452 (JAF).
Bankruptcy No. B–87–03026 ESL.
Adv. No. 88–0060 ESL.

United States District Court,
D. Puerto Rico.

June 17, 1991.

David P. Freedman, O'Neill & Borges, San Juan, P.R., for plaintiff-appellee.

Harry Anduze–Montaño, Guillermo Ramos–Luiña, San Juan, P.R., for defendants-appellants.

### OPINION AND ORDER

FUSTE, District Judge.

Milton J. Rúa, Jr. and his wife, Denise de Mauret de Rúa, (Rúa), Defendants–Appellants, seek review of a bankruptcy court judgment entered on May 15, 1989 in the case of *In re Colonial Mortgage Bankers Inc., Debtor.* Mr. Rúa was the president of the debtor corporation, a mortgage company. On December 30, 1987, Colonial filed for relief under Chapter 11 of the Bankruptcy Code. On February 12, 1988, a consent order was entered appointing a Chapter 11 operating trustee, Hans López Stubbe, plaintiff-appellee herein ("Trustee"). Rúa complains that 1) the bankruptcy court should not have ordered an accounting against him, since there was no evidence to suggest that he had property or assets belonging to the debtor; 2) an injunction against his transfer of personal assets until the accounting is performed is oppressive since it lacks a time limit and is vague, and 3) the bankruptcy judge's denial of a setoff against certain of Rúa's obligations to Colonial was in error.

### History of the Proceedings

After appointment the Trustee began an adversary proceeding against the defendants pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O). The Trustee sought:

1. The return of $186,116.91 of pre-petition cash advances to Rúa;

2. An accounting from defendants of all property of Colonial which came into their possession from March 30, 1984 to date;

3. An injunction against transfer of the defendants' residence at Cerezo No. 4, San Patricio Urbanization, Guaynabo, Puerto Rico; and,

4. An injunction against transfer by the defendants of all assets: (a) which could be used to satisfy a judgment entered against them in favor of the Trustee; (b) which belong to the estate; and (c) which explain the financial affairs of Colonial.

In November of 1988 the claim for an injunction against the sale of the residence at Cerezo No. 4 was dropped by stipulation. The remaining relief was granted.

*Standard of Review*

In reviewing the factual findings of the bankruptcy judge, we are to apply a clearly erroneous standard. Bankruptcy Rule 8013; *Briden v. Foley*, 776 F.2d 379 (1st Cir.1985). Exercise of discretion will not be disturbed unless it constitutes abuse. *In re Carter*, 100 B.R. 123 (Bankr.D.Me. 1989).

*Accounting*

■ The bankruptcy judge ordered an accounting on the theory that Rúa had commingled Colonial corporate funds with his own personal funds and in the course of doing so made payments and cancellations of debts which benefitted Rúa personally while hurting the corporation. The bankruptcy judge relied on Rúa's fiduciary duty to the corporation, combined with a pattern of suspicious transfers, to determine that Rúa could be forced to account for all benefits which he had received from the corporation, lest other creditors should be left empty-handed. Rúa acknowledges the propriety of an accounting if there is in fact evidence of commingling and breach of fiduciary duty, but he denies that there is any such evidence on this record.

The bankruptcy judge found the following facts. In the prepetition period, Colonial made advances to Rúa in the amount of $186,116.91. In addition, another $17,-000 was paid by Colonial to banks on ac-count of debts of Rúa. Rúa caused Colonial to pay $47,000 towards the remodeling of the No. 4 Cerezo Street residence in the second half of 1987. Rúa caused Colonial to pay $11,000 on account of a loan which Rúa had obtained to purchase the property. During the last quarter of 1986 and 1987, Rúa caused Colonial to pay $58,152.16 on a loan of Rúa's issued at Banco Financiero.

The judge also found that Rúa was involved in a "check-kiting" scheme during the relevant period in which checks were rapidly transferred through a series of accounts set up by Rúa. The scheme resulted in deficiencies being left in the accounts of some investors.

Rúa does not dispute any specific finding by the judge. Instead, Rúa generally assails the judge's conclusion that enough evidence exists to suggest that Rúa's transactions benefitted Rúa and hurt the corporation to an extent greater than the liabilities to which Rúa has already admitted. Rúa asserts, therefore, that he holds nothing rightfully belonging to Colonial, obviating the need for an accounting. We disagree.

The judge's findings are more than amply supported by the record. The pattern that emerges is one of a total breakdown between corporate and private funds in the time leading up to the filing of bankruptcy, and a general disregard on the part of Rúa for his professional responsibilities. Rúa was clearly playing a shell game of shifting funds and debts, one that, more likely than not, was designed to make reconstruction of the many transactions difficult. Only through an accounting can the Trustee hope to recreate an accurate picture of the interwoven relationship between the assets and debits of Colonial and Rúa himself.

*Injunction Against Transfer of Assets*

■ Having determined that an accounting was necessary to untangle the mess between Rúa's funds and those properly belonging to Colonial, the judge ordered that all transfers of property "other than in the ordinary course of business" are subject to court approval. (Opinion and

Order, pp. 16–17). Given the history of Rúa's fund juggling, it is only reasonable that the court would seek to keep a close eye on the transfers of assets until after the accounting can determine whose assets they actually are. Rúa makes no charge that the bankruptcy judge has refused to grant reasonable requests to transfer property. In fact, the judge allowed the No. 4 Cerezo Street residence to be transferred over the objection of the Trustee. This indicates to us that there is no reason to believe that the injunction is or will be enforced in a particularly opprobrious manner.

### Denial of Setoff

Rúa argues that he is entitled to a setoff of any debt he may have to Colonial as a result of post-petition payments that he made to creditors of Colonial. The payments, made possible by the infusion of cash caused by the sale of the Rúas' residence, canceled a total of $400,747.89 worth of debts that ran against Colonial. Rúa seeks to have that amount setoff against the $186,116.91 in pre-petition advances he received from Colonial (which he admits owing).

■ The Bankruptcy Code provides for setoff of mutual, pre-petition debts. 11 U.S.C. § 553. Setoffs are only available where they will clearly not interfere with the policy of the bankruptcy laws. Their inherent danger has been recognized recently by the First Circuit:

> The orderly reorganization of debtors is the paramount objective of Chapter 11. In attaining that objective, it is important —as, indeed, it is important in administering other chapters of the Bankruptcy Code—that creditors should be treated fairly. As Congress recognized, setoffs work against both the goal of orderly reorganization and the fairness principle because they preserve serendipitous advantages accruing to creditors who happen to hold mutual obligations, thus disfavoring other equally-deserving creditors and interrupting the debtor's cash flow.... Consequently, the circle of creditors entitled to exercise setoff

rights in bankruptcy is tightly circumscribed.

*In re Public Service Co. of New Hampshire,* 884 F.2d 11, 13 (1st Cir.1989).

■ The Code allows for setoff for a "mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...." 11 U.S.C. § 553. The Code section is not an independent source of setoff rights. For that, the party claiming setoff must present some independent federal or state substantive law on which to prove its property right in this regard. *Public Service,* 884 F.2d at 14. *Saugus General Hospital Inc. v. Saugus Bank and Trust Company,* 698 F.2d 42 (1st Cir.1983).

■ Neither side suggests that any independent federal substantive law creates a right to setoff here. If a right exists, therefore, it must derive from Puerto Rico law. Although the bankruptcy judge failed to analyze the question in terms of Puerto Rico law, we can draw enough from his analysis and conclusions of law to make our own application of Puerto Rico precedent to this case.

The first issue is the timing of the debt owed Rúa by Colonial. "It is clear under [§ 553] that a creditor may not set off its pre-petition claims against a debt owed to the debtor which came into existence after the filing of the bankruptcy petition." *Cooper–Jarrett, Inc. v. Central Transport, Inc.,* 726 F.2d 93, 96 (3rd Cir.1984). While the advances (Rúa's debt to Colonial) were obviously pre-petition, the date upon which Colonial incurred a debt to Rúa which could be recognized as subject to setoff pursuant to Puerto Rico law is debatable. Rúa claims that the debt from Colonial to Rúa came due and subject to setoff on December 23, 1987, the date upon which the loan between Colonial and the banks from which it had borrowed the funds became due. Since December 23, 1987 predates the filing of the petition, (December 30, 1987), Rúa argues that the debt matured pre-petition. The Trustee argues that no liability was incurred by Colo-

nial as against Rúa until Rúa actually made payments to Colonial's creditors in the post-petition period.

In signing onto the debts with Colonial, Rúa bound himself as guarantor. Under Puerto Rico law he was a "garantizador solidario". As such, he was severally and jointly liable to the banks on the debt in the same way that Colonial itself was. 31 L.P.R.A. § 3101. Having paid Colonial's debt, he accrued a cause of action against Colonial pursuant to 31 L.P.R.A. § 3109:

> Once [the joint debtor] has complied with his obligation, the debt is extinguished as to all debtors. However, at that moment, and not before, a new obligation will become executory on the other solidary debtors; that of compensation.
>
> .     .     .     .     .
>
> In this situation, it has been held that the right of contribution does not accrue before payment by one of the solidary debtors.

*Wong v. Key Finance Corporation,* 266 F.Supp. 149, 154 (D.P.R.1967).

On the face of it, this language in the *Wong* case indicates that the solidary debtor (Rúa) has no matured cause of action against the codebtor (Colonial) until satisfaction of the debt by the solidary debtor has already taken place, even though the guarantor is liable at the time the debt is due and unpaid. *FDIC v. Municipality of Ponce,* 904 F.2d 740, 744 (1st Cir.1990). It is not so simple. As the *Wong* case goes on to explain, while no cause of action arises until after payment in the situation of joint-debtors *generally,* guarantors ("fiadores") stand in a unique position to the borrowers whose debt they guarantee. Guarantors retain special rights, not available to joint-debtors generally. One of those is set out in 31 L.P.R.A. § 4916:

> § 4916.  Action by surety against debtor before payment
>
> The surety, even before paying, may proceed against the principal debtor:
>
> .     .     .     .     .
>
> 4.  When the debt has become demandable because the term in which it should have been paid has expired.

Rúa argues, then, that since he had a "cause" against Colonial at the time that Colonial first defaulted (pre-petition), he is entitled to a setoff. We disagree.

Puerto Rico law contains provisions regarding setoffs generally (referred to as "compensation"):

> § 3221.  When compensation takes place
>
> Compensation shall take place when two persons, in their own right, are mutually creditors and debtors of each other.
>
> .     .     .     .     .
>
> § 3222.  Requisites
>
> In order that compensation may be proper, it is required:
>
> 1.  That each of the persons bound should be so principally, and that he be at the same time the principal creditor of the other.
> 2.  That both debts consist of a sum of money or, when the things due are perishable, that they be of the same kind and also of the same quality, if the latter should have been stipulated.
> 3.  That both debts are due.
> 4.  That they be determined and demandable.
> 5.  That none of them is subject to any retention or suit instituted by a third person, and of which due notice has been given the debtor.

31 L.P.R.A. §§ 3221, 3222. We do not believe that the right of the guarantor to sue the debtor under section 4916 before the guarantor has yet paid any money on behalf of the debtor vests in the guarantor a debt certain, due, and liquidated against the debtor as required in section 3222. For Rúa's theory to work, we would have to find that Rúa had a right, after Colonial's default, before the filing of the petition, *and before Rúa had paid anything to Colonial's creditors on the loans in question,* to demand a judgment against Colonial for the full amount of Colonial's loans to the bank.

In fact, section 4916 does not entitle the guarantor to such a remedy. Rather, the section has been interpreted to provide a procedure for the guarantor to "attach"

property of the debtor while the guarantor has time to settle with the creditor, so that the debtor will not be able to dissipate resources, and thereby unfairly frustrate the guarantor's right to seek reimbursement for the debt to be paid. *Acosta & Rodas Inc. v. PRAICO*, 122 D.P.R. 583 (1982) ("preventive injunction" is remedy available to guarantor against debtor in period before satisfaction of debt by guarantor).

Since there was no liquidated debt due from Colonial to Rúa in the pre-petition period, no setoff would be available under Puerto Rico law. 31 L.P.R.A. §§ 3221, 3222. Rúa, claiming no federally-based substantive right to setoff, is left with no basis to demand such relief. The claim fails for a lack of mutuality, in that there was no pre-petition mutual right to payment.

■ The bankruptcy judge's decision not to offset was based at least in part on the fact that the advances from Colonial to Rúa did not come about as the result of arm's length transaction, precluding mutuality. We agree. In *In re Perry, Adams and Lewis Securities, Inc.*, 30 B.R. 845 (Bankr.W.D.Mo.1983), the court held that no mutuality of debt existed between corporate advances to an individual who was officer, director, and major shareholder of the corporation and a debt owed to that individual by the corporation. *But see, Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1037 (5th Cir.1987) (questioning *Perry*). Whether it is analyzed in terms of a lack of mutuality, or merely as a discretionary reason to deny setoff even if mutuality exists, we agree that advances paid to alter-egos of corporations should only rarely be the subject of setoffs. Otherwise, legitimate creditors may be left holding an empty bag as the alter-ego sets off the advances they paid to themselves under the guise of corporate action.

### Conclusion

We agree with the conclusions of the bankruptcy court in this matter in all respects. Although we believe that the bank-

ruptcy judge should have applied Puerto Rico law to determine the mutuality question, all the facts needed for us to make an independent application of that law were already in the record. Even aside from the application of Puerto Rico law, we agree that the bankruptcy judge was well within his discretion to deny setoff in a situation where the party seeking setoff was so intimately related with the finances of the debtor prior to the filing for relief. We affirm.

IT IS SO ORDERED.