In re COLONIAL MORTGAGE
BANKERS CORPORATION,
Debtor.

Hans López–Stubbe, as Trustee of
Colonial Mortgage Bankers
Corporation, Appellant,

v.

Milton J. Rua and Denise De
Mauret Rua, Appellees.

BAP No. PR 97–020.

United States Bankruptcy Appellate Panel
of the First Circuit.

Jan. 8, 1999.

David P. Freedman and O'Neill & Borges, San Juan, PR, on brief, for appellant.

Harry Anduze Montaño, San Juan, PR, on brief, for appellees.

Before VOTOLATO, Chief Judge, HILLMAN and VAUGHN U.S. Bankruptcy Judges.

VOTOLATO, Chief Judge.

The Chapter 7 trustee, Hans López–Stubbe, appeals a December 17, 1996 Judgment of the Bankruptcy Court for the District of Puerto Rico, denying the Trustee's Motion for Summary Judgment and dismissing his crossclaim against Milton J. Rúa, et al. In said order the Bankruptcy Judge ruled that the crossclaim was barred by: (1) the applicable statute of limitations; and (2) the doctrine of transactional res judicata. On December 26, 1996, the Trustee filed a timely motion to alter or amend the Judgment, which was denied on February 12, 1997, and he also seeks appellate review of that order. For the reasons discussed below, we reverse as to both orders, and remand.

■ This appeal is timely filed, *see* Fed. R. Bankr.P. 8002(b), and the Bankruptcy Appellate Panel has jurisdiction pursuant to 28 U.S.C. § 158. The "clearly erroneous" standard is applied in reviewing the bankruptcy court's findings of fact, and conclusions of law are reviewed de novo. *See Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107–108 (1st Cir.1997); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1310–11 (1st Cir.1993).

## BACKGROUND

The travel of this case consumes volumes of files, spans over a decade of litigation with numerous appeals and remands, and has severely tested the endurance of a very patient Bankruptcy Judge. The stage for this case was first set in May 1975, when Bowery Savings Bank entered into a mortgage servicing agreement with Lincoln Financial Mortgage Corporation, and later in 1983, when Milton J. Rúa purchased 100% of the outstanding shares of Lincoln. Later that year, Rúa formed Colonial Mortgage Bankers Corporation and named himself president and a director of Colonial. Colonial succeeded to the interests of Lincoln and continued to do business with Bowery under the Colonial name. Pursuant to its mortgage servicing arrangement, Colonial collected mortgage payments and deposited them in its corporate account at Banco Popular de Puerto Rico. Thereafter, the funds would be transferred to accounts at Banco Financiero de Puerto Rico and Banco Santander de Puerto Rico "in trust" for Bowery, and Colonial would make disbursements to Bowery in accordance with the mortgage servicing agreement.

Sometime in 1986 Colonial began to withdraw and use funds from the Bowery trust accounts in violation of the mortgage servicing agreement. Bowery first learned of these misdeeds in December 1987, when six checks totaling $324,403 drawn by Colonial to the order of Bowery were returned for insufficient funds. When confronted, Rúa admitted using over a million dollars from the Bowery trust accounts to pay personal debts, Colonial debts, and to cover a Colonial loan which was in default.

On December 22, 1987, Bowery filed suit in the United States District Court for the District of Puerto Rico against Colonial, Milton Rúa, his spouse and their conjugal partnership (the "Rúa Defendants"), and several banks, alleging *inter alia* breach of the mortgage servicing agreement. Eight days later, on December 30, 1987, Colonial filed for relief under Chapter 11 of the Bankruptcy Code, and on February 2, 1988, by consent, Hans López Stubbe was appointed Chapter 11 Trustee. In 1991, the case was converted to Chapter 7 and Lopez Stubbe was appointed Chapter 7 Trustee.

## THE LITIGATION

### A. *Colonial I:*

Within three months of his appointment as Chapter 11 Trustee, on May 11, 1988, Lopez Stubbe commenced Adversary Proceeding No. 88–0060 in the bankruptcy court against the Rúa Defendants, seeking:

(1) turnover of cash advances made by Colonial to Rúa, totaling $186,116, and listed in Colonial's books and records as outstanding debt;

(2) an order directing the Rúa Defendants to provide an accounting of all property belonging to Colonial and received by them since March 1, 1984;

(3) an injunction restraining the Rúa Defendants from encumbering or selling their real estate and furnishings at 4 Cerezo Street, San Patricio, Guaynabo, Puerto Rico; and

(4) an injunction restraining the Rúa Defendants from disposing of any assets without prior Court approval.

On May 13, 1988, the bankruptcy court held an emergency hearing on the Trustee's request for a temporary restraining order and entered an order enjoining the Rúa Defendants from alienating or in any way disposing of or encumbering their personal residence at 4 Cerezo Street, San Patricio, Guaynabo, Puerto Rico. On September 15, 1988, the bankruptcy court held the preliminary hearing and, finding no credible evidence that the Rúa Defendants were attempting to dispose of their property, denied the request for an injunction.

The bankruptcy court heard the matter on the merits on December 14, 1988, and on April 12, 1989, filed its opinion, containing, *inter alia,* as findings that:

1. The debtor, Colonial, made numerous and substantial advances to Rúa;

2. Colonial paid monies to banks on account of debts of Rúa;

3. Colonial paid off Rúa's second mortgage on his personal residence;

4. Rúa caused Colonial to make payments of $47,000 to remodel his personal residence;

5. Rúa caused Colonial to make payments, through debits on its operating account, on loans of Rúa;

6. Rúa received checks from Colonial drawn from origination accounts established for disbursement of mortgage loan closing proceeds; and

7. Colonial paid $58,152.16 on one of Rúa's loans during the last quarters of 1986 and 1987.

*Stubbe v. Rua (In re Colonial Mortgage Bankers Corp.),* BK No. 87–03026, A.P. No. 88–0060, slip op. at 3–9 (Bankr.D.P.R. April 12, 1989).

Based on these findings the bankruptcy court concluded that there was ample evidence of commingling of funds and property by the Rúa Defendants, and granted the Trustee's request for an accounting. The court went on to explain that the objective of the accounting was to uncover what other injuries may have been inflicted upon Colonial, and so far creatively concealed from the view of the Trustee. The court also stated:

> Mr. Milton J. Rúa, Jr., as president of the debtor corporation, *may be liable* to Colonial for any deficiencies as a result of these activities, inasmuch as an officer of the corporation, he owed the debtor a duty of using reasonable care to ascertain that the balance in the bank accounts were sufficient to cover any transactions.... To such effects an accounting is needed.

> Mr. Milton J. Rúa, Jr. has not accounted for his transactions as President of Colonial to the appointed trustee. Mr. Milton J. Rúa, Jr. breached his fiduciary duties as a corporate officer toward his corporation prior to the filing of the bankruptcy petition by making self-dealing transactions and commingling his personal funds and assets with those of the debtor corporation.

> *In order to determine the extent of the self-dealing transactions made by Mr. Milton J. Rúa, Jr. and the value of the assets of the debtor corporation as of the date of the filing, an accounting is required.* There may be other remedies available to the trustee to get this information, such as an examination of debtor's president under Bankruptcy Rule 2004. However, we find that the discovery methods or a Bankruptcy Rule 2004 examination of Mr. Milton J. Rúa, Jr. may not be sufficient to afford the relief the trustee is entitled to.

*Stubbe v. Rúa (In re Colonial Mortgage Bankers Corp.),* BK No. 87–03026, A.P. No. 88–0060, slip op. at 13–14 (Bankr.D.P.R.

April 12, 1989) (emphasis added) (citations omitted).

Reversing its September order denying injunctive relief and granting a permanent injunction, the bankruptcy court also said:

Based upon the evidence presented, we find that the debtor's estate may be directly affected by the outcome of the accounting requested by the trustee herein. *In view of the fact that one of the purposes of the accounting is to separate the commingled funds and assets of the defendants from the ones of the estate,* this Court now finds that there are grounds for the issuance of an injunction against the defendants herein to enjoin them from transferring any personal assets until the accounting is performed.

*Stubbe v. Rúa (In re Colonial Mortgage Bankers Corp.)*, BK No. 87–03026, A.P. No. 88–0060, slip op. at 16–17 (Bankr.D.P.R. April 12, 1989) (emphasis added). The Rúa Defendants were also directed to turn over "any information, books, records or property regarding the financial affairs of the debtor corporation" to the Trustee. *Id.* at 18. Both the district court and the First Circuit Court of Appeals affirmed this decision in all respects. *See Stubbe v. Rúa (In re Colonial Mortgage Bankers Corp.)* 128 B.R. 21 (D.P.R.1991), *aff'd*, 971 F.2d 744 (1st Cir. 1992).

B. *Colonial II:*

On March 10, 1988, immediately after his appointment (and prior to commencing A.P. 88–0060), the Trustee entered his appearance on behalf of Colonial in Bowery's action pending in the district court, was substituted as Colonial's successor in interest, and moved to dismiss counts two and five.[1] One month later Bowery moved for and was given leave to amend the complaint, and on January 31, 1989, Bowery again amended its complaint and moved for summary judgment. On February 8, 1990, the Trustee filed crossclaims against the Rúa Defendants and the defendant banks, as well as a counterclaim

against Bowery. In his crossclaims the Trustee alleges waste, mismanagement, misuse of customer accounts and deposits, breach of fiduciary duties, self dealing, conspiracy, and securities law violations, and requests treble damages pursuant to 18 U.S.C. § 1961, et seq. In the counterclaim the Trustee alleges that Bowery breached its obligation to negotiate in good faith.

Written arguments on the summary judgment motion volleyed back and forth between the parties for almost two years, culminating in the filing of a 152 page "Proposed Pre-Trial Order." On October 31, 1991, the district court entered its opinion and order on Bowery's summary judgment motion, as follows:

(1) Bowery's Motion for Summary Judgment against Colonial and Rúa is granted (the Rúa Defendants and Colonial were found to have breached the mortgage servicing agreement);

(2) the Trustee's counterclaim against Bowery is dismissed for failure to state a cause of action;

(3) the Trustee's crossclaims against the banks are likewise dismissed; and

(4) the Trustee's crossclaims against the Rúa Defendants are remanded to the Bankruptcy Court for trial.

C. *The Remanded Litigation—Colonial III:*

On December 23, 1993, Adversary Proceeding No. 93–0284 was opened in the bankruptcy court, consisting of the remanded crossclaims of the Trustee against the Rúa Defendants originally filed in C.A. No. 87–1874.[2]

Two years later, on December 1, 1995, the Trustee moved for summary judgment in the amount of $7,368,645 in A.P. No. 93–0284, relying on the decisions of the bankruptcy court, district court and First Circuit Court

---

1. The Trustee's motion to dismiss was denied on September 1, 1988.

2. These are the crossclaims remanded by the district court in the October 31, 1991 summary

judgment decision. The record is silent as to what transpired with respect to the crossclaims in the intervening two years.

of Appeals in *Colonial I*,[3] the district court holding in *Colonial II*,[4] and Mr. Rúa's criminal conviction.[5]

On September 25, 1996, the bankruptcy court denied the Trustee's motion for summary judgment and dismissed the tort claims brought under Article 1802 of the Puerto Rico Civil Code [6] as being barred by the one year statute of limitations, *see* 31 P.R. Laws § 5298.[7] Specifically, the court found that the Trustee had notice of the Rúa Defendants' alleged tortious conduct as early as May 24, 1988—the date of the Puerto Rico Commissioner of Financial Institutions' report detailing the extensive diversion of Colonial funds by Rúa. Given this time frame, the court held that when the Trustee commenced A.P. No. 93–0284 on December 23, 1993, the tort claims had lapsed. Additionally, the court ruled that the Trustee's RICO claims under 18 U.S.C. § 1962(c) were likewise barred, based on transactional res judicata, since those claims could (and should) have been raised by the Trustee in *Colonial I* (A.P. No. 88–0060). On December 26, 1997, the Trustee filed a motion to alter or amend the bankruptcy court's September 25, 1996 order of dismissal,[8] and that motion was denied on February 12, 1997.

On appeal, the Trustee argues that the bankruptcy court misapplied the commencement of the limitations period for A.P. No. 93–0284, since these claims were originally filed as crossclaims in the district court *(Colonial II)*. Therefore, the Trustee argues,

the crossclaims relate back to the filing of the original Bowery complaint in the district court—December 22, 1987.

On reconsideration, the Bankruptcy Judge did not address this argument, but relied instead on his earlier ruling that " '[t]he 1802 claim, were it not barred by the statute of limitations, would also be barred by the transactional res judicata doctrine.' " *Bowery Sav. Bank v. Colonial Mortgage Bankers Corp. (In re Colonial Mortgage Bankers Corp.)* BK No. 87–03026, A.P. No. 93–0284, slip op. at 2 (Bankr.D.P.R. February 12, 1997). The court deemed the tort claims barred on the ground of transactional res judicata, based on the finding that the cause of action stemmed from the common nucleus of operative facts contained in *Colonial I*. *See Bowery Sav. Bank v. Colonial Mortgage Bankers Corp. (In re Colonial Mortgage Bankers Corp.)* BK No. 87–03026, A.P. No. 93–0284, slip op. at 14 (Bankr.D.P.R. September 25, 1996). The Trustee appeals both the December 17, 1996 Judgment and February 12, 1997 Opinion and Order.

### DISCUSSION

#### A. Transactional Res Judicata

■ Appellant Trustee argues that the Bankruptcy Judge erred in applying the doctrine of transactional res judicata to bar the litigation of the RICO and Puerto Rico tort claims, as there was neither identicality of causes of action, nor a final judgment on the merits.[9]

---

**3.** *Stubbe v. Rúa (In re Colonial Mortgage Bankers Corp.)*, BK No. 87–03026, A.P. No. 88–0060 (Bankr.D.P.R. April 12, 1989); *Stubbe v. Rúa (In re Colonial Mortgage Bankers Corp.)* 128 B.R. 21 (D.P.R.1991), *aff'd*, 971 F.2d 744 (1st Cir.1992).

**4.** *The Bowery Sav. Bank v. Colonial Mortgage Bankers Corp., et al.*, CA No. RLA 87–1874(JAF) (D.P.R. October 31, 1991).

**5.** Rúa pleaded guilty to charges of mail fraud and bank fraud, *see United States v. Milton Juan Rúa Cabrer*, CR No. 92–32(JAF) (D.P.R. February 19, 1992).

**6.** This statute provides that "a person who by an act · or omission causes damage to another through fault or negligence shall be obligated to repair the damage so done." 31 P.R. Laws § 5141.

**7.** While the Opinion and Order is dated September 25, 1996, Judgment did not enter until December 17, 1996.

**8.** The Motion to alter or amend the judgment was originally filed on November 7, 1996, and renewed on December 26, 1996.

**9.** The Trustee argues that because *Colonial I* was on appeal when the RICO and tort claims were filed in *Colonial II*, there was no final judgment in the earlier suit (*Colonial I*), precluding the application of *res judicata*. This argument fails because "in the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed— detract from its decisiveness and finality." *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 184, 61 S.Ct. 513, 85 L.Ed. 725 (1941).

■ The federal law of res judicata governs when reviewing the preclusive effect of a prior federal court judgment on a subsequent action brought in federal court. *Apparel Art Int'l Inc. v. Amertex Enters.*, 48 F.3d 576, 582 (1st Cir.1995) (citing *In re El San Juan Hotel Corp.*, 841 F.2d 6, 9 (1st Cir.1988) (other citations omitted)). In dealing with this issue, the First Circuit utilizes a three-part test. "For a claim to be precluded, the following elements must be present: 1) a final judgment on the merits in an earlier suit; 2) sufficient identicality between the causes of action asserted in the earlier and later suits; and 3) sufficient identicality between the parties in the two suits." *Apparel Art*, 48 F.3d at 583 (other citations omitted). Stated more succinctly, "[o]nly where two separate suits involve sufficiently identical causes of action does a judgment in an earlier action preclude litigation of claims in a subsequent action." *Id.*

■ To assess whether causes of action raised in separate suits are sufficiently identical, a *transactional* approach is used. "If the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action." *Apparel Art*, 48 F.3d at 584. If, however, the claims advanced in the second action are separate and distinct from the earlier proceeding, i.e., if they rest on a different *factual* basis, then res judicata will not apply. *Id., see also, Landrigan v. City of Warwick*, 628 F.2d 736, 741 (1st Cir.1980).

Three factors have been highlighted as probative of whether claims derive from the same nucleus of operative facts:

1) [w]hether the facts are related in time, space, origin or motivation;

2) whether the facts form a convenient trial unit; and

3) whether treating the facts as a unit conforms to the parties' expectations.

*Apparel Art*, 48 F.3d at 584; *see also, Manego v. Orleans Board of Trade*, 773 F.2d 1, 5 (1st Cir.1985) *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986) (citing Restatement (Second) of Judgments § 24 (1982)).

Moreover, the nature of the injury should be considered in delineating the parameters of the common nucleus of operative facts. *Apparel Art*, 48 F.3d at 584. Indeed, "the focus of a 'transactional' analysis is not whether a second claim *could* have been brought in a prior suit, but whether the underlying facts of both transactions were the same or substantially similar." *Manego*, 773 F.2d at 6.

■ Turning to the present appeal we must determine whether, as a matter of law, the factual basis for each claim in *Colonial I* (A.P. No. 88–0060) is substantially identical to those in *Colonial III* (A.P. No. 93–0284).

In *Colonial I*, the Bankruptcy Judge made detailed findings that Milton Rúa used the corporation as his personal piggy bank, taking numerous and substantial advances to pay personal debts, such as the cost of remodeling his personal residence, the payoff of his second mortgage, and hefty payments on numerous personal loans. The facts as found by the Bankruptcy Judge, and which are fully supported by the record, disclosed a most inappropriate debtor-creditor relationship between Colonial and Rúa, requiring the Trustee to seek an accounting "to unravel the tangled mess." Based on its findings of extensive and improper intermingling of funds and property, the court ordered an accounting "to determine the extent of the self-dealing transactions made by Mr. Milton J. Rúa, Jr. and the value of the assets of the debtor corporation as of the date of the filing." *Stubbe v. Rúa (In re Colonial Mortgage Bankers Corp.)*, BK No. 87–03026, A.P. No. 88–0060, slip op. at 14 (Bankr.D.P.R. April 12, 1989).

Clearly then, the factual basis for the claim of an accounting and turnover of the books and records in *Colonial I* was Rúa's blatant use of Colonial as his alter ego and personal bank account. But the extent of Rúa's self-dealing was unknown to the Trustee, and that is what gave rise to the need for an accounting and turnover of the books and records, to "untangle the mess." The Trustee also sought turnover of an undisputed receivable listed in Colonial's bankruptcy petition as a debt owed by Rúa. The injunctive relief was granted to maintain the status quo

and to prevent Rúa from alienating assets which potentially would satisfy any future judgment obtained by the Trustee.

The factual basis in *Colonial III* (which are the remanded cross-claims first arising in *Colonial II)* is founded upon Rúa's self-dealing and misuse of Colonial assets. The Trustee alleges that Rúa committed waste and mismanagement by failing to utilize sound business practices, causing Colonial's insolvency. He also alleges that Rúa engaged in a check kiting scheme, shifting and commingling various loan servicing accounts and trust funds to mask Colonial's insolvency. He also alleges that by using Colonial's money for his own benefit, Rúa breached his fiduciary duty to Colonial.

While the facts in *Colonial I* appear to be related in time, space and origin to *Colonial III*, we view the litigation in *Colonial I* as a necessary but separate prerequisite to get to *Colonial III*, and it appears that when rendering its decision in *Colonial I* the bankruptcy court was of a similar understanding. The Bankruptcy Judge articulated that the purpose of the injunction was to preserve the status quo while the Trustee sorted through the books and records to ascertain who owed what to whom. From there, the court pointed out that Rúa might be subject to further liability as the details of his self-dealing were uncovered through the accounting. "Mr. Milton J. Rúa, Jr., as president of the debtor corporation, may be liable to Colonial for any deficiencies as a result of these activities...." *Stubbe v. Rúa (In re Colonial Mortgage Bankers Corp.)*, BK No. 87–03026, A.P. No. 88–0060, slip op. at 14 (Bankr. D.P.R. April 12, 1989). On appeal, the district court echoed these sentiments: "Given the history of Rúa's fund juggling, it is only reasonable that the [bankruptcy] court would seek to keep a close eye on the transfers of assets until after the accounting can determine whose assets they actually are." *Colonial Mortgage*, 128 B.R. at 24.

In finding a sufficient identicality between the two actions and applying the doctrine of transactional res judicata in *Colonial III*, the Bankruptcy Judge stated that "[t]he trustee's claim under RICO, in spite of the differ-

ence in nature from the prior claim, stems from Mr. Rúa's check kiting scheme as detailed in our facts, above. It was this very same scheme by Rúa that gave rise to *Colonial I* and *Colonial II*." Exhibit 1, Opinion and Order dated 9/25/96, p. 13, Appellant's Appendix, Volume 1. For the following reasons, we must disagree with the Bankruptcy Judge's conclusion on this pivotal issue.

*Colonial I* was filed by the Trustee within sixty days of his appointment as trustee. In his three and one-half page Complaint, the Trustee alleged that: (1) According to the schedules of assets and liabilities filed in the bankruptcy case, Rúa owed the estate $186,-116; (2) Rúa had used and was still using property of the estate for his own benefit; and (3) Rúa was disposing of estate assets to thwart payment of creditor's claims. *See* Complaint, Appellant's Exhibit 15. The narrow objective of the Trustee in this Complaint was to obtain short term, emergency relief (i.e., an injunction to preserve the status quo and an accounting of property and any proceeds received from property sold or transferred). *See id.* He was also requesting turnover of an undisputed sum listed in Colonial's bankruptcy schedules due and owing from Rúa.[10] *Id.* The Trustee never alleged the existence of a check kiting scheme in that action, and we do not agree that such a scheme "gave rise" to *Colonial I. See id.* The bankruptcy court, in discussing the existence of a check kiting scheme when granting the request for an accounting and injunctive relief, went further than required, but this should not preclude the Trustee from litigating that issue in a subsequent action. While the factual basis underpinning *Colonial III* may include the check kiting scheme, the RICO and tort claims were not defined until *after* the accounting was rendered as ordered in *Colonial I*, and *after* the discovery in *Colonial II* was completed. *See Manego*, 773 F.2d at 6 ("if information is not reasonably discoverable, res judicata will not apply").

Furthermore, it is the conclusion of the panel that the facts do not form a convenient trial unit. The Trustee needed the accounting from *Colonial I* to determine the extent of the self-dealing and damage done to Colo-

---

**10.** In fact, Rúa never disputed that he was indebted to Colonial. His only defense was that he should be allowed to apply principles of set off to this obligation.

nial *before* proceeding with *Colonial III.* Additionally, part of the reason for filing *Colonial I* early on was to preserve the status quo while the Trustee continued his investigation.

In applying the third factor, i.e., "whether treating the facts as a unit conforms to the parties' expectations," *Apparel Art,* 48 F.3d at 584, it is clear that treating the turnover, accounting, and injunction action, and the RICO and tort claims all as one unit would not conform to the parties' expectations. The only reasonable expectation of the parties in 1988 was that *Colonial I* was intended to maintain the status quo and to provide the Trustee with more comprehensive information to ferret out other claims, and that is exactly what happened.

Moreover, an important exception to the res judicata doctrine arises when "[t]he court in an earlier action expressly reserves the litigant's right to bring those claims in a later action." *Apparel Art,* 48 F.3d at 586. While the bankruptcy judge's language in *Colonial I, supra* at page 522, certainly alludes to the reservation of rights for future litigation, albeit not as explicitly as it might have been, it captures the essence of what the parties (and the bankruptcy court, we believe) understood to be the factual basis for the Trustee's claims.

Finally, the facts found in *Colonial I,* which help define the contours of the common nucleus of operative facts, include the Trustee's inability to obtain information from Rúa, and the preservation of the status quo to prevent further damage to the estate. The injury in *Colonial III* is the specific loss of funds to Colonial (and the estate) through Rúa's self-dealing and dishonest management of the corporation. The different (and contrasting) emphasis of the bankruptcy court's findings between *Colonial I* and *Colonial III* requires the conclusion that the claims in *Colonial I* are separate and distinct from those raised in *Colonial III,* and do not derive from a common nucleus of operative facts.

For these reasons we hold as a matter of law that Trustee's crossclaim, subsequently remanded to the bankruptcy court and embodied in A.P. No. 93–0284 is not barred by the doctrine of transactional res judicata.

## B. *Prescription*

The Trustee's tort claims are founded upon Puerto Rico law, 31 L.P.R.A. § 5141. As such, the limitations period on such actions is set by 31 L.P.R.A. § 5298 which states:

The following prescribe in one (1) year:

. . .

(2) Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in section 5141 of this title, from the time the aggrieved person had knowledge thereof.

The bankruptcy court found that May 1988—the date of the Puerto Rico Commissioner of Financial Institutions' report—was the date that the cause of action accrued, triggering the limitations period. Neither party has quarreled with this finding on appeal. The court went on to state that because the Trustee did not "file" Adversary Proceeding 93–0284 until December 23, 1993, more than one year after the claims accrued, these claims were barred by the one year statute of limitations.

■ We must respectfully disagree with the Bankruptcy Judge's conclusion that the Trustee did not initiate the claims in question until December 23, 1993. It is the Panel's conclusion that these tort claims were first advanced in the Trustee's "Crossclaims and Counterclaims" which were filed in the district court in *Colonial II,* on February 8, 1990. The Trustee contends here that the crossclaims relate back to the original filing date of the Bowery Complaint commencing *Colonial II*—December 22, 1987. But we need not decide that issue, as it was waived by Rúa's failure to affirmatively plead it in his April 18, 1990 Answer and in the Proposed Pre–Trial Order filed in the district court action in November 1990. First Circuit law is that affirmative defenses under Fed.R.Civ.P. 8(c) generally are waived if not asserted in the original pleadings. *See Badway v. United States,* 367 F.2d 22, (1st Cir. 1966); *Federal Deposit Ins. Corp. v. Ramirez–Rivera,* 869 F.2d 624, 626 (1st Cir. 1989).

On April 18, 1990, Rúa answered the Trustee's cross-claims, asserting several af-

firmative defenses, but said not a word about the statute of limitations. *See* Appellant's Exhibit 25, Answer to Cross Claim. Furthermore, on November 9, 1990, the parties filed a Proposed Pre–Trial Order in *Colonial II*, and nowhere in that 152 page document did Rúa raise the issue of prescription. *See* Appellant's Exhibit 26, Proposed Pre–Trial Order. Thus, based on the controlling authority in this Circuit, we conclude that the defense of statute of limitations was waived by Rúa in 1990.

While the Trustee has presented additional arguments on matters raised in the summary judgment papers, these issues were not decided by the bankruptcy judge,[11] and we decline the Trustee's invitation to rule on them now. Rather, this issue is also remanded to the bankruptcy court for consideration.

For the foregoing reasons, the December 17, 1996 Judgment and the February 12, 1997 order of the bankruptcy court are REVERSED, and REMANDED to the bankruptcy court for further proceedings consistent with this order.

---

11. Specifically, the Rúa Defendants argue that the Trustee's RICO claims were not pleaded with sufficient specificity and detail, requiring their dismissal. The Trustee responds that the pleadings, combined with the 152 page Pre–Trial Order filed in the district court, adequately notified the Rúa Defendants of the RICO claims. Additionally, the Trustee contends that summary judgment should be awarded in his favor.