Carl Ray ROBINSON, Plaintiff,

v.

Jack E. WORTHINGTON, Individually;
et al., Defendants.

Civ. A. No. 79–584–N.

United States District Court,
M. D. Alabama, N. D.

April 28, 1982.

Alvin T. Prestwood, Claude P. Rosser, Jr., Montgomery, Ala., for plaintiff.

Charles A. Stakely, Robert A. Huffaker, Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for all defendants except Worthington, Gwin, Crumpler and Alabama Medicaid Agency.

Charles A. Graddick, Atty. Gen., Herman Hamilton, Sp. Asst. Atty. Gen., Thomas S. Lawson, Jr., Shapard D. Ashley, Capell, Howard, Knabe & Cobbs, Montgomery, Ala., for Worthington, Holzworth, Gwin, Crumpler, Alabama Medicaid Agency, and Faye Baggiano.

## OPINION

VARNER, Chief Judge.

This cause is before the Court on a motion for summary judgment filed herein March 4, 1982, and on motions to dismiss filed herein March 9, 1982. Inasmuch as consideration of the motions to dismiss requires this Court to review matters contained in this Court's file in the case of *Carl Ray Robinson v. Jack E. Worthington, et al.*, 544 F.Supp. 956, the motions to dismiss will be treated as motions for summary judgment.[1]

## I. FACTS[2]

This action (Robinson II) is the second of two lawsuits filed by Dr. Carl Ray Robinson, both of which challenge the lawfulness of the termination of his status as a medicaid provider. Robinson I was filed on September 26, 1977. In that action, Robinson alleged in a two-count complaint that various Alabama governmental and health officials—all named as Defendants—had unlawfully terminated his status as a medicaid provider. In these two counts, he asked this Court to declare the termination unlawful on due process grounds, and he further sought injunctive relief. Defendants answered and moved for summary judgment. Thereafter, with leave of Court, Robinson amended his complaint by adding Counts III and IV in which he sought to recover payments for work he had performed as a medicaid provider. A short time later and before any answer or summary judgment as to the new counts was filed, Robinson filed a "Notice of Dismissal Under Rule 41" which purported to voluntarily dismiss Counts III and IV without prejudice. See, Federal Rule of Civil Procedure 41(a). This Court subsequently granted Defendants' motion for summary judgment and entered a judgment in Defendants' favor. Robinson filed a notice of appeal of the judgment to the United States Court of Appeals for the Fifth Circuit; however, several months later, that appeal was voluntarily withdrawn and dismissed as of December 19, 1978.

On November 30, 1979, 20 months after the first judgment, Robinson filed this second action (Robinson II) against basically the same group of Alabama officials sued in Robinson I. Robinson II sought recovery of money damages on the theories that *Robinson's termination* as an Alabama Medicaid provider violated federal and State antitrust laws and his constitutional right

---

1. Plaintiff has been informed of this and has consented to submitting these motions on the record as it presently exists without presenting any additional materials.

2. This statement of facts is substantially taken from the Court of Appeals' Opinion in *Robinson v. Worthington*, 667 F.2d 94 (5th Cir., 1982).

to substantive due process. This Court, invoking the doctrine of res judicata, dismissed Robinson's second action, concluding that his claim fell within the allegations of the Amended Complaint in Robinson I.

On appeal of Robinson II, the Court of Appeals held that the "voluntary dismissal" which sought to dismiss Counts III and IV of Robinson I was ineffectual because, under Rule 41(a) of the Federal Rules of Civil Procedure, a voluntary dismissal is proper only prior to the time an answer or a motion for summary judgment is made. *Robinson v. Worthington*, 667 F.2d 94 (5th Cir., 1982). According to the Court's reasoning, Counts III and IV were fully viable at the time of this Court's entry of summary judgment in favor of the Defendants. The Court further explained that, given the viability of Counts III and IV, this Court's entry of summary judgment only adjudicated Plaintiff's rights under Counts I and II. Following Rule 54(b), the Court held that the summary judgment decision adjudicated fewer than all the claims and that, therefore, the judgment in that case was not final so as to bar Robinson II on res judicata grounds. The Court, accordingly, reversed this Court's decision in Robinson II which granted summary judgment on the basis of the res judicata doctrine.

Following the Court's reversal in Robinson II, Defendants sought to correct the record in Robinson I. Based on motions filed in Robinson I, this Court granted Robinson's long-pending notice of dismissal of Counts III and IV, construed as a motion for leave to amend and amendment, and additionally dismissed Robinson I for failure to prosecute. The judgment (or "Order of Entry of Judgment") in Robinson I was corrected to reflect this Court's ruling on Robinson's attempt to dismiss Counts III and IV. Also, under Federal Rule of Civil Procedure 41(b), the dismissal for failure to prosecute operated as an adjudication on the merits of Robinson I.

The present motion for summary judgment and motions to dismiss filed in this case (Robinson II) seek, following the Court's most recent rulings in Robinson I,

to reassert the application of the res judicata doctrine. Defendants contend that the judgment in Robinson I is now final and that the judgment in Robinson I now bars litigation of Plaintiff's claims in Robinson II. See, *Robinson v. Worthington*, 667 F.2d 94 (5th Cir., Jan. 21, 1982).

## II. CONCLUSIONS OF LAW

A. RES JUDICATA. An analysis of whether the doctrine of res judicata would now apply so as to prevent the continuance of this action requires the Court to examine two separate questions. The first question is whether there are two actions, i.e., a terminated first action (Robinson I) capable of barring this action or whether this Court must, following the earlier Court of Appeals' decision and for whatever reason, regard the two actions as one action that must proceed without further reference to the doctrine of res judicata. The second question is whether the present action involves the same cause of action as Robinson I. See, *White v. World Finance of Meridian, Inc.*, 653 F.2d 147, 150 (5th Cir., Unit A, 1981).

1. *Question I.* The first question to be addressed concerns whether the two actions, Robinson I and this action, still retain their separate status or whether they must now be considered one action to which the doctrine of res judicata will not apply. An initial review of the Court of Appeals' opinion in this case evoked two theories concerning the procedural posture of the case which had to be addressed by the Court. The first theory would indicate that the second action was, in effect, an amendment of the first action which, according to the Court of Appeals, was still in existence at the time of the institution of the second suit. The second theory would indicate that the two cases should be consolidated so that the two cases would now be one case such that no prior action could be used to support the application of the doctrine of res judicata.

■ (a) Amendment. The first theory concerning amendment may be disposed of without extensive discussion. In Robinson

I, responsive pleadings had been filed thereby terminating Plaintiff's right to amend, as a matter of course, the pleading therein by adding the Robinson II allegations. See, Federal Rule of Civil Procedure 15(a). Any other attempt to amend would have been left to the discretion of the Court. While the issue was never raised by Plaintiff in that no formal attempt to amend the Robinson I pleadings was made, even assuming an attempt to amend was made—formally or informally by filing Robinson II—this Court would have denied Plaintiff's right to amend. Under the United States Supreme Court decision in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), undue delay in attempting the amendment and undue prejudice to the opposing party by virtue of allowance of the amendment would clearly provide a sufficient predicate for this Court's denial of leave to amend Robinson I.[3]

Since no responsive pleading had been filed in Robinson II, Plaintiff might also have sought to add Robinson I counts to Robinson II. However, Plaintiff never filed any amendment to the pleadings in Robinson II. In any event, such an attempt to amend Robinson II would have left Robinson I extant; therefore, a prior resolution of that case might still have barred Robinson II.

Based on the fact that Robinson II could not be considered an amendment to the pleadings in Robinson I and based on the fact that no attempt to amend Robinson II was made, two actions still existed. Assuming that Robinson I was terminated prior to Robinson II and assuming that Robinson II involved the same cause of action * as Robinson I, it would appear that Robinson I might still be used to bar Robinson II.

(b) Consolidation. On first being confronted with the novel situation presented by these two cases—Robinson I and Robinson II—the Court felt that perhaps a consolidation of the two cases under Rule 42(a)[4] would be in order. The Court contemplated that such a consolidation might destroy the status of the cases as separate actions, thereby precluding the Court from applying the doctrine of res judicata to bar Robinson II by a final decision in Robinson I.

■ A review of the law concerning consolidation quickly disabused the Court of the notion that actions somehow lose their separate identity upon consolidation. The ruling of the Supreme Court in regard to consolidation prior to the adoption of Rule 42(a) is still regarded as authoritative:

> "Consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Railway Co.*, 289 U.S. 429, 496–497, 53 S.Ct. 721, 727, 77 L.Ed. 1331 (1933).

> "Thus the Courts hold that actions do not lose their separate identity because of consolidation." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil, § 2382. See, *Alfred Dunhill of London v. Republic of Cuba*, 425 U.S. 682, 735, 96 S.Ct. 1854, 1881, 48 L.Ed.2d 301 (1976) [Marshall, J., dissenting]

In the present set of circumstances, two actions have been filed, one in 1977 and one in 1979. Even if consolidated, however, the identity of the two actions remains; therefore, if one is terminated before the other, the final judgment in the first might bar the second suit.

---

**3.** In this Court's opinion, too great a liberty in construing the Federal Rules of Civil Procedure would be required in order to hold that the filing of Robinson II constituted an attempt to amend Robinson I.

* The term, "cause of action", is used here to mean a cause for a suit as distinguished from the limited definition meaning a form of pleading. See footnote 2, infra.

**4.** Federal Rule of Civil Procedure 42(a) reads as follows: "When actions involving a common question of law or fact are pending before the Court, it may order a joint hearing or trial of any or all the matters in issue in the action; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

(c) Two actions in same Court. Question I adverted to above involves the question of whether Robinson I is capable of barring Robinson II. The aberrational occurrence of two actions existing simultaneously in the same court which arise out of the same circumstances was, in effect, called to the parties' and this Court's attention by the Court of Appeals' decision in Robinson II. That opinion cited Rule 54(b)[5] to support the proposition that the Robinson I judgment was not final. As a result of that decision, Robinson I was reopened and was considered a pending action. The question which must be addressed is whether the pending status of two actions in the same court concerning the same matter might affect whether a decision in Robinson I bars maintenance of Robinson II.

This Court has been referred to a case with facts very similar to those of the present set of circumstances. *Norman Tobacco & Candy Co. v. Gillette Safety Razor Co.*, 295 F.2d 362 (5th Cir. 1961), [hereinafter Norman II], was the second of two actions filed by Norman. The first action [Norman I] stated a claim for breach of contract and sought damages growing out of the severance of a relationship between plaintiff and defendant. The second action cited above stated a claim for breach of federal antitrust laws and sought damages growing out of the same severance of relationship involved in the first action. Both of these actions were instituted simultaneously and in the same court. The court noted that Norman II was "running its course through the series of complaints, amended complaints, motions to dismiss and finally the Summary Judgment appealed from, at the same time the contract case (Norman I) was moving toward a jury trial which resulted in a verdict in favor of the Safety Razor Company and against Appellant Norman." *Norman Tobacco*, supra, 295 F.2d at 362.

The Court in Norman II held that the action in Norman II involved the same cause of action as that in Norman I and that the earlier verdict in Norman I barred maintenance of the action in Norman II. The Court upheld the District Court's granting of summary judgment on res judicata grounds. The analogies between Norman I and II and Robinson I and II are obvious. More important, however, is the fact that the first finally-determined action of two actions simultaneously filed in the same court could be held to bar the maintenance of the second action. It would appear, therefore, that, even though Robinson I and II were simultaneously pending in this Court—to the extent that both cases involve the same cause of action—a final determination of Robinson I could bar Robinson II.

This principle which is implied in Norman, i.e., that the first finally-decided action of two simultaneously filed actions may bar the second action, has been clearly recognized in situations where one federal court case and one State court case involving the same matter are proceeding in tandem.

> "It is well settled that where state and federal courts have concurrent jurisdiction * * * in personam actions involving similar issues may proceed simultaneously in both forums. [citations omitted] If judgment is first obtained in the state court, the federal court must then determine whether principles of res judicata operate to bar further proceedings." *Gilbert v. School District No. 50*, 485 F.Supp. 505, 507 (D.Colo.1980), citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). See, also, *Kline v. Burke Construction Co.*, 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226 (1922).

---

**5.** Federal Rule of Civil Procedure 54(b) states, in pertinent part: "[T]he Court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the ab-sence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *shall not terminate the action as to any of the claims or parties* * * * (emphasis added)."

If such a principle applies in State-Federal Court cases, it would clearly appear logical for such a principle to apply where two cases are pending in the same federal court. Accordingly, the only question remaining is whether the principle of res judicata would apply so that a final decision in Robinson I bars further proceedings in Robinson II.

2. *Question II.* At this point, it is appropriate for this Court to incorporate herein most of the Opinion entered in this cause on January 29, 1980.[6] With two exceptions, that Opinion accurately reflects this Court's present opinion as to whether the decision in Robinson I bars Robinson II. The Court will now deal with two matters not addressed in the earlier Opinion.

In the Court of Appeals' Opinion reversing this Court's earlier dismissal of Robinson II, the Court pointed out that no final judgment—as that term is viewed under Rule 54(b)—had been entered in Robinson I. The Court held, therefore, that the doctrine of res judicata could not apply so as to bar the maintenance of additional proceedings in Robinson II. As indicated earlier in this Opinion, based on motions filed in Robinson I, this Court corrected the judgment (an "Order of Entry of Judgment") in Robinson I so as to reflect this Court's dismissal of Counts III and IV of the amended complaint. In addition, Robinson I was dismissed in its entirety for failure to prosecute—that dismissal operating under Rule 41(b) as an adjudication on the merits of the entire case.

■ Returning to Rule 54(b) and viewing the present status of the case in the light of that rule, it now appears that the Court has "directed the entry of a final judgment as to * * * all of the claims" in Robinson I. Therefore, a final judgment in Robinson I exists.

An additional problem which this Court must address is raised by a recent decision of the Fifth Circuit Court of Appeals in *White v. World Finance of Meridian,* 653 F.2d 147 (5th Cir., Unit A, 1981). That case involved a suit by a lender against borrowers who defaulted on a note. In the action against the borrowers, the borrowers counterclaimed, alleging various loan violations under Mississippi law. The counterclaimants specifically alleged that the lender charged a sum which was not the lesser of the value of the property insured on the total of payments and that the lender left blanks on an instrument after the loan was made. See, Miss.Code Ann. §§ 75–67–121 (1972) and § 75–67–127(2)(b). The Mississippi County Court held that the lender had violated several Mississippi statutes including those above and, therefore, dismissed the action with prejudice. Subsequently, the borrowers brought suit in the United States District Court for the Southern District of Mississippi, alleging various truth-in-lending violations under 15 U.S.C. § 1639 and implementing Regulation Z. Although both actions arose out of the same loan transaction, the Court of Appeals held that the dismissal with prejudice of the lender's County Court suit did not bar the truth-in-lending action. The Court specifically stated that the action under the Mississippi statute is not the same cause of action [7] as that brought under the federal statute. This is so, the Court stated, even though the "primary right and duty in both statutes * * * is identical in that they require disclosure * * *." *White,* supra, at 150.

The Court based its conclusion that the causes of action were different on the ground that certain specific violations of the Truth-In-Lending Act (TILA, 15 U.S.C. § 1640) did not constitute violations of the Mississippi statute. The Court held, therefore, that the "violations or wrongs sued for under TILA are different than those addressed [in the Mississippi statute], and thus

---

6. The Court does not, however, incorporate herein Footnote 3 on page 4 of that Opinion.

7. The Court earlier stated as a central point of departure for its Analysis that "the principal test recognized by this Court for comparing causes of action is whether the primary right and duty or wrong are the same in each action." *White v. World Finance,* supra, 653 F.2d at 150.

constitute two separate causes of action."[8] *White*, supra, at 150.

This decision presents some problems for the Court in that Robinson I and Robinson II involved two federal statutory causes of action. Robinson I involved 42 U.S.C. § 1983 [9] and the constitutional rights it protects, and Robinson II involves federal and State antitrust statutes, as well as 42 U.S.C. § 1983. See, 15 U.S.C. §§ 1 and 15 (1973), and Code of Alabama, § 6–5–60 [1975]. The central distinguishing factor between the two cases in *White* and the two cases involved here is, as was vaguely alluded to by the Court's analysis in *White*, that the statutes involved in *White* are very specific in nature. Those statutes enumerate specific acts or omissions as being improper. Therefore, rather than having one primary right and wrong involved,** there are numerous specific rights accorded by the statutes, the breach of which specific statutory rights are wrongs. None of these rights and wrongs can, however, be given value greater than the others. They are all primary rights and wrongs created by the statutes. To the extent the TILA statutes in *White* proscribe different conduct than the Mississippi statutes, the *rights* and *wrongs* are different and, therefore, the primary *rights*, as well as the primary wrongs are different.

In the instant case, however, the constitutional provisions and other statutes do not accord specific rights and specify particular acts as wrongs. Rather, the antitrust statutes and the constitutional provisions rendered enforceable by § 1983 seek to protect people from a general sort of injury by prohibiting any sort of conduct that would cause such injury. Although the theories upon which a plaintiff proceeds to redress injury caused by conduct are different, the primary right (and, again, they are not numerous as in *White*) to be free from injury is the same. Also, inasmuch as the primary rights involved here are the same, the primary wrongs thereby defined are the same.

A second distinguishing factor (though not unrelated to the central distinguishing factor) between the statutes involved in *White* and the statutes involved here is that, unlike the situation in *White*, the same basic conduct is alleged in the instant case to give rise to an action under both the constitutional provisions enforced under § 1983 and the antitrust statutes. Here, without the termination of Robinson, no right of action secured by the Constitution and 42 U.S.C. § 1983 or the antitrust statutes would accrue. This is different from the situation in *White* where the same conduct did not give rise to actions under both statutes.

A third and final distinguishing factor between the cases in *White* and the cases here stems from the remedies available under the relevant constitutional and statutory provisions. The Court in *White* stated:

"The [Mississippi County] Court found that Lender had violated that section as well as others. See note 3, supra. By comparison, the present action under review seeks relief pursuant to 15 U.S.C.A. § 1640 (Truth-In-Lending Act—TILA), which establishes damages as a matter of law for violations * * *." 653 F.2d at 150.

Earlier the Court had said, in prefacing this remark, that "the remedies afforded [by the statutes] for nondisclosure [i.e., a breach of the statutes] are distinct and different." *White*, supra, 653 F.2d at 150. It appears, therefore, that remedies were provided by TILA but were not provided by the Missis-

---

**8.** As will be explained below, this Court feels that not only were the wrongs different, but also that the rights involved in the two statutes in *White* were different. While the Court in *White* seems to have alluded to this, it is difficult to resolve the conflict inherent between such a view and the statement that the "primary rights are identical". *White*, supra, at 150.

**9.** While Plaintiff did not specifically refer to 42 U.S.C. § 1983 in the Robinson I complaint, an examination of the averments contained in it reveals that that statute was of necessity the ground upon which the cause of action proceeded.

** In both cases, Robinson sued for violation of an alleged right not to be terminated.

sippi statutes. That is not the situation in the present case. Here, remedies are available in § 1983 and the federal and State antitrust statutes. In the instant case, there is not the distinct difference in remedies as was apparent in *White*.

 Inasmuch as the primary rights and wrongs involved here are the same; inasmuch as the conduct here gives rise to actions under both relevant provisions; inasmuch as remedies are provided by both provisions; and inasmuch as all other elements of res judicata specified in this Court's earlier Opinion have been met, the doctrine of res judicata made applicable by the judgment in Robinson I bars further proceedings in the instant case—Robinson II. See, *White*, supra, at 150; *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir. 1979); *Stevenson v. International Paper Co.*, 516 F.2d 103, 109 (5th Cir. 1975).

B. IMMUNITY. The action in question here is brought against State agencies as well as State officials in their individual and official capacities. Absent the consent of the State to such a suit, this action against State agencies is barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). It does not appear that the State has consented to such a suit. Furthermore, the decision of the Alabama Supreme Court in *Aland v. Graham*, 287 Ala. 226, 250 So.2d 677 (1971), does not stand for the proposition that Alabama has consented to a suit for declaratory judgment such as this one. The action is also brought against State officials in their official capacities. Under *Edelman v. Jordan*, supra, absent consent, actions which seek to recover retroactive monetary relief from the State are barred. Therefore, this action is barred to the extent the relief requested constitutes such retroactive monetary relief.

10. This ruling also bars suit against the Alabama Medicaid Agency, the successor agency of the Medical Services Administration.

### III. CONCLUSION

The present action is barred by the principle of res judicata. The action against the Medical Services Administration [10], the Alabama State Board of Health and the State Committee of Public Health is barred by the Eleventh Amendment. The action against each of the State officials in their official capacities is barred by the Eleventh Amendment to the extent Plaintiff seeks retroactive monetary relief.[11]

An appropriate Order of Summary Judgment will be entered in accordance with the terms of this Opinion.

11. This ruling also bars suit against Faye Baggiano, Commissioner of Medicaid, and official successor to Jack E. Worthington, Robert H. Holzworth and Jack W. Gwin.