**BAY STATE HMO MANAGEMENT, INC., et al., Plaintiffs, Appellees,**

v.

**TINGLEY SYSTEMS, INC., Defendant, Appellant.**

**Tingley Systems, Inc., Plaintiff, Appellant,**

v.

**CSC Consulting, Inc., f/k/a CSC Partners, Inc., Defendant, Appellee.**

**Nos. 96–1574, 98–2334.**

United States Court of Appeals, First Circuit.

Heard May 5, 1999.

Decided June 30, 1999.

G. Donovan Conwell, Jr., with whom Guillermo A. Pernas, Jr., Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Edward P. Liebensperger, Christa von der Luft and Nutter, McClennen & Fish, LLP were on brief, for appellant.

Michael Arthur Walsh, with whom Eric J. Marandett, Laura M. Scott and Choate, Hall & Stewart were on brief, for appellee CSC Consulting, Inc.

Marc K. Temin, with whom Foley, Hoag & Eliot LLP was on brief, for appellee Bay State Health Management, Inc., et al.

Before TORRUELLA, Chief Judge, CYR, and POLLAK,* Senior District Judges.

TORRUELLA, Chief Judge.

Appellant Tingley Systems, Inc. ("Tingley") appeals from the district court's orders in two consolidated cases. Tingley brought suit against appellee Bay State

---

* Of the Eastern District of Pennsylvania, sitting by designation.

Health Management, Inc. ("Bay State")[1] and its parent, appellee Blue Cross and Blue Shield of Massachusetts ("BCBSMA"), for breach of contract, fraud, misappropriation of trade secrets, and copyright infringement. After learning of facts that allegedly implicate appellee CSC Consulting, Inc. ("CSC") as a co-perpetrator in this conduct, Tingley filed a new complaint against CSC and consolidated that case with the case against Bay State into "one proceeding." Tingley and Bay State settled the claims raised in the first complaint and stipulated to dismiss the first action with prejudice. Upon motion by CSC, the district court then entered summary judgment against Tingley in the second action, finding it barred by the res judicata effect of the dismissal of the first action. Tingley sought to have the judgment in the first action modified to preserve the claims of the second action, but the district court denied Tingley's motion, despite what the district court termed a "harsh result." Tingley appeals, and we reverse.

## BACKGROUND

Bay State is a Boston, Massachusetts-based health care maintenance organization ("HMO"). Tingley is a Florida corporation which creates, supports, and distributes computer software for the HMO industry. In a licensing agreement dated March 14, 1989, Tingley licensed computer software to Bay State for Bay State's own internal use. The licensing agreement contained strict confidentiality requirements and prohibited Bay State from providing any third party with access to the Tingley software.

In 1990, Bay State created three software packages that allegedly incorporated the file structure and source code of the Tingley software. The resulting dispute over ownership of these software packages led Bay State to sue Tingley on June 14,

1993 in the United States District Court for the District of Massachusetts. In response, Tingley immediately sued Bay State in the United States District Court for the Middle District of Florida. In the Florida action, Tingley alleged that Bay State breached the licensing agreement and misappropriated trade secrets by disclosing Tingley's proprietary material to consultants during the creation of the software packages. The Florida action was transferred to the District of Massachusetts, and on December 17, 1993, the district court consolidated the two cases into Civil Case No. 97–1574 ("the Bay State cases"). Tingley later amended the complaint to add BCBSMA as a defendant and to allege causes of action for copyright infringement and fraud.

Tingley claims that, during discovery, it learned that CSC performed consulting services on one of Bay State's software package projects. In mid-December of 1994, after several delays and subpoenas, Tingley obtained several weekly status reports that were prepared by CSC consultants in connection with the Bay State software project. According to Tingley, those status reports revealed that one of the CSC consultants, Vicki Gifford, obtained the Tingley trade secret file layouts, studied them, and then loaded them into the software that CSC was creating for Bay State. Upon receiving this information, Tingley immediately moved to extend the discovery cutoff in the Bay State cases, but the motion was denied.

On February 9, 1995, Tingley filed a new action against CSC ("the CSC case"), claiming: (1) misappropriation of trade secrets; (2) copyright infringement; (3) unfair competition; (4) tortious interference with the licensing agreement and Tingley's business relationship with Bay State; and (5) conspiracy with Bay State to misappropriate Tingley's trade secrets and copy Tingley's software. On July 11, 1995,

---

1. At the time the relevant actions were filed, Bay State was known as Bay State HMO Management, Inc.

upon motion by Tingley, Magistrate Judge Marianne B. Bowler consolidated the CSC case and the Bay State cases into "one proceeding." On July 28, 1995, Tingley filed a second amended complaint in the Bay State cases, including nine additional allegations of fraud against Bay State. The amended complaint captioned the Bay State and CSC cases, but only amended the claims against Bay State.

In September of 1995, Tingley and Bay State reached a settlement in the Bay State cases. A stipulation and order of dismissal was signed by the parties and entered by the court on September 11, 1995. The order captioned both the Bay State and CSC cases, but dismissed only the Bay State cases.

On October 17, 1995, CSC filed a motion for summary judgment in the CSC case on the basis of res judicata, claiming that the September 11, 1995 order of dismissal of the Bay State cases barred all of Tingley's claims against CSC. Tingley opposed this motion and alternatively moved for limited relief from judgment in the Bay State cases. The district court granted CSC's motion for summary judgment in the CSC case and denied Tingley's motion for limited relief from judgment in the Bay State cases. Tingley now appeals both rulings.

## DISCUSSION

■ We turn first to Tingley's appeal of the grant of summary judgment in favor of CSC. We review a grant of summary judgment on res judicata grounds *de novo.* *See Porn v. National Grange Mut. Ins. Co.,* 93 F.3d 31, 33 (1st Cir.1996). The applicability of the doctrine of res judicata is a question of law subject to plenary review. *See id.*

■ Under federal law, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action. *See id.* at 34 (citing *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). For a claim to be precluded, there must be: (1) a final judgment on the merits in an earlier action; (2) sufficient identity between the causes of action asserted in the earlier and later suits; and (3) sufficient identity between the parties in the two suits. *See id.* (citing *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.,* 48 F.3d 576, 583 (1st Cir.1995)). CSC and Tingley dispute the first and third elements, as well as Tingley's claim that CSC consented to allow Tingley to split its claims, free of res judicata effect. Because we find that the first element is not satisfied, we do not address Tingley's other contentions.

■ The district court held that the dismissal of the Bay State cases with prejudice constitutes a "final judgment on the merits" for res judicata purposes. The district court cited two First Circuit cases in stating that: (1) cases consolidated for purposes of convenience and judicial efficiency retain their separate identities, and (2) final judgments rendered in each individual action are final judgments. *See Tingley Sys., Inc. v. CSC Consulting, Inc.,* 919 F.Supp. 48, 51 (D.Mass.1996) (citing *Fed. Deposit Ins. Corp. v. Caledonia Inv. Corp.,* 862 F.2d 378, 381 (1st Cir.1988), and *In re Massachusetts Helicopter Airlines, Inc.,* 469 F.2d 439, 441–42 (1st Cir.1972)).

Tingley does not dispute the finality of the resolution of the Bay State cases, but claims that there was no final judgment on the merits in a separate action because the Bay State cases and the CSC case should be treated as a single action for res judicata purposes. If the cases are treated as a single action, the dismissal of the claims against Bay State would be treated as a dismissal of all claims against CSC's "co-defendants" and therefore would have no preclusive effect on the claims against CSC.

At the outset, we note that there is no doubt that the Bay State cases and the CSC case are technically separate actions. *See Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 496–97, 53 S.Ct. 721, 77 L.Ed.

1331 (1933) (stating that consolidation is simply a judicial tool which "is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another"). Three separate original complaints were filed, and those three cases were consolidated before the district court in Massachusetts. However, the essence of consolidation is that, even though the cases are technically separate actions, they are treated as a single action for particular purposes. Despite CSC's representations to the contrary, the *Johnson* Court did not state that consolidated actions must always be treated as separate actions *for all purposes*. The question here is whether we should overlook this technical separateness and treat the consolidated cases as a single action for purposes of determining the res judicata effect of the settlement of the Bay State cases.

We agree with Tingley that we are not bound by the statements in *Massachusetts Helicopter* and *Caledonia Investment* in making this decision. Those cases dealt with the question of whether an order terminating one of two or more consolidated cases is appealable absent a certification pursuant to Fed.R.Civ.P. Rule 54(b). Rule 54(b) provides that, when an action presents more than one claim for relief or when multiple parties are involved, the district court may direct the entry of final judgment as to less than all of the claims or parties—and therefore allow a separate appeal—if it finds that there is no just reason for delay. *See* Fed.R.Civ.P. 54(b). In *Massachusetts Helicopter*, we held that consolidated cases retain their separate-ness for purposes of appeal and therefore the district court need not issue such a Rule 54(b) certification to allow an appeal from the termination of one of the consolidated cases. *See Massachusetts Helicopter*, 469 F.2d at 441–42. We affirmed that principle in *Caledonia Investment. See* 862 F.2d at 381.

The question presented in *Massachusetts Helicopter* bears little on the question of whether the termination of one of the consolidated cases should preclude further proceedings in the remaining case or cases. The idea that consolidated cases maintain their separateness for purposes of determining their appealability is not inconsistent with treating those consolidated cases as a single action for res judicata purposes. The fact that certain claims are separate enough to be appealed separately does not mean that the claims are separate enough to preclude all other similar claims on res judicata grounds. For example, if a district court dismisses claims against one of several co-defendants in a particular non-consolidated case, the court may certify that dismissal as an immediately and separately appealable final judgment. *See* Fed.R.Civ.P. 54(b). Yet there is no suggestion that the court's certification of the appealability (and therefore the separateness) of this portion of the case somehow forever precludes further litigation of the rest of the case. Therefore, while *Massachusetts Helicopter* provides the rule of this circuit regarding the separateness of consolidated cases for the one purpose of appeal,[2] it does not bar us from accepting Tingley's invitation to treat the Bay State cases and the CSC case as a single action for res judicata purposes.[3]

---

**2.** We note that other circuits have taken the opposite position and treated consolidated cases as a single action for purposes of appealability, thus requiring a Rule 54(b) certification before the termination of one of the cases may be appealed. *See, e.g., Trinity Broad. Corp. v. Eller*, 827 F.2d 673, 675 (10th Cir.1987); *Huene v. United States*, 743 F.2d 703, 705 (9th Cir.1984). The existence of these cases further demonstrates that *Johnson* does not mandate that consolidated cases al-

ways retain their separateness for all purposes.

**3.** Tingley also offers a second basis for distinguishing *Massachusetts Helicopter*. Tingley argues that *Massachusetts Helicopter* is limited to cases consolidated for purposes of convenience and judicial efficiency and does not apply to cases that are consolidated for all purposes. The *Massachusetts Helicopter* court left open the possibility that actions

Tingley cites opinions of other courts that it claims have addressed the separateness issue in the res judicata context. While most miss the.mark, one is at least marginally helpful to Tingley. In *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 347 (2d Cir.1995), the Second Circuit faced a situation in which two closely related actions were pending before the same judge. The plaintiff in one of the actions abandoned its claims and stipulated to a dismissal of its claims with prejudice. The district court then granted summary judgment in the other action on res judicata grounds, finding the plaintiffs to be in privity. The Second Circuit reversed, finding that the plaintiffs were not in privity because the plaintiff in the abandoned case had different incentives than the plaintiff who remained. *See id.* at 346–47. In closing, the court commented that it was a "peculiar case in which to assert claim preclusion for another reason." *Id.* at 347. The court noted that the closely related cases were pending before the same judge, although there was no formal order of consolidation. *See id.* The court stated that, therefore, the defendant was not in the position of having litigated in one forum and then being forced to defend an identical action in another forum. *See id.* The court then described the use of res judicata as "something of an ambush," because the actions proceeded together absent only a formal consolidation order. *Id.* However, the court stopped short of explicitly declaring that this constituted an independent ground for reversing the district court's application of res judicata.

CSC responds by citing *Robinson v. Worthington*, 544 F.Supp. 949, 952 (M.D.Ala.1982), in which a district court opined that, even if two actions were to be consolidated before the same court, the separate identities of the two actions would remain, and final judgment in one action might bar the second action on res judicata grounds. *See id.* We note first that the cases in *Robinson* had not actually been consolidated, so the court's statement regarding the potential effects of consolidation was merely dicta. Nevertheless, the district court reached its conclusion after citing authority for the principle that consolidation does not merge two actions into

could be consolidated into one action and therefore lose their separateness. *See Massachusetts Helicopter*, 469 F.2d at 442 n. 3; *see also Jordan v. Kelly*, 728 F.2d 1, 4 (1st Cir. 1984) (citing *Massachusetts Helicopter* for the proposition that courts may consolidate identical actions into one action).

There are two relevant types of consolidations: (1) those in which separate actions are combined into one action and lose their separate identities, and (2) those in which separate actions are to be tried together but each retains its separate character and requires the entry of a separate judgment. *See Ivanov–McPhee v. Washington Nat'l Ins. Co.*, 719 F.2d 927, 929 (7th Cir.1983) (citing 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2382, at 254 (1971)). Several cases highlight this important distinction, and it appears that *Massachusetts Helicopter* is inapplicable to cases consolidated into one action for all purposes. *See Caledonia Investment*, 862 F.2d at 381 (stating that *Massachusetts Helicopter* is limited to cases consolidated for purposes of convenience and judicial efficiency and refusing to decide the jurisdiction issue because it was unclear whether the cases were consolidated for convenience and judicial efficiency or for all purposes); *Cablevision Sys. Dev. Co. v. Motion Picture Assoc. of Am., Inc.*, 808 F.2d 133, 136 n. 3 (D.C.Cir.1987) (distinguishing *Massachusetts Helicopter* on the grounds that the consolidation in that case was not for "all purposes," but was only for convenience of pre-trial and trial procedure).

Even so, it is not at all clear which type of consolidation occurred here. The magistrate judge stated that the cases would be consolidated into "one proceeding," creating the possibility that this was the type of complete consolidation that *Massachusetts Helicopter* declined to address. However, the magistrate judge's reasons for consolidating the Bay State and CSC cases were based largely upon convenience and efficiency. Additionally, the cases retained certain aspects of separateness, including separate case numbers and docket sheets. Because of this ambiguity, we do not join Tingley in distinguishing *Massachusetts Helicopter* from the present facts on this additional basis. Rather, we accept this limitation on *Massachusetts Helicopter* for what it is: recognition that consolidated cases may not necessarily retain their technical separateness in all instances and for all purposes.

a single case. *See id.* However, this analysis ignores the fact that consolidated actions are *treated* as a single action for some purposes, such as discovery or trial. The *Robinson* district court performed no inquiry into res judicata principles; instead, it simply applied the technical separateness of consolidated cases in the res judicata context. Thus, *Robinson* provides little assistance in determining whether consolidated actions should be treated as a single action for res judicata purposes.

Notwithstanding the paucity of authority cited by the parties on this question, we believe that the Bay State cases and the CSC case should be treated as a single action for res judicata purposes. We can find no circuit opinion in which the first of two consolidated cases to be resolved was found to have a res judicata effect on the other.[4] However, we have found a very recent Second Circuit case, not cited by the parties, in which a plaintiff with two closely related actions pending before the same district judge at the same time was spared the potentially punitive res judicata effect of the entry of judgment in the first action. In *Devlin v. Transportation Communications Int'l Union,* 175 F.3d 121 (2d Cir.1999), the Second Circuit was faced with a district court decision similar to the one at bar. The plaintiffs, retirees and former employees of the defendant labor union, filed an action challenging a $100 charge under their medical benefits plan. In that action ("*Devlin I*"), the plaintiffs alleged claims under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), as well as New York anti-discrimination and contract law. The claims for breach of contract and age discrimination were quickly dismissed as preempted by ERISA, but the ERISA claims remained. In the order dismissing the anti-discrimination claims, the court stated that "[i]f Plaintiffs have a federal age discrimination claim, they should plead it." Rather than amend the complaint, the plaintiffs filed a second action while the first was still pending. The complaint in the new action ("*Devlin II*") alleged a claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), based on acts both related to and apart from the medical benefits plan. *Devlin II* was then transferred, as a "related case," to the same court in which *Devlin I* was pending. Nearly two years later, summary judgment was entered in favor of defendants on all remaining claims in *Devlin I.* Shortly thereafter, the district court dismissed plaintiffs' medical benefits claim in *Devlin II,* based on the res judicata effect of the judgment in *Devlin I.*

The Second Circuit vacated the district court's application of res judicata. *See Devlin,* 175 F.3d 121, 129. The court noted that both cases were before the same district judge at the same time and that the judge knew that the cases were related. *See id.* at 128. The court also noted that the plaintiffs did not wait until after the entry of judgment in *Devlin I* before filing the related action. *See id.* The Second Circuit then framed the question as "whether the appellants should be hoisted with their own procedural petard for failing to plead the ADEA claim in *Devlin I* as the district court instructed." *Id.* The court expressed puzzlement as to why the plaintiffs did not plead their ADEA claims in *Devlin I* as instructed, but stated that the puzzling actions should not lead to the dismissal of the ADEA claims on res judicata grounds, "given the fortuitous circumstance that the same district judge had both *Devlin I* and *Devlin II* on his active

---

4. We did find a district court opinion from the Southern District of Georgia in which the court found the legal effect of a consolidation in this context to be "little more than a procedural curiosity." *Booth v. Quantum Chem. Corp.,* 942 F.Supp. 580, 587 n. 6 (S.D.Ga. 1996). The court cited the district court opinion in *Robinson* and recited the principle that consolidated cases are not truly a single action. *See id.* The court then applied the doctrine of res judicata to bar a case that was consolidated with another case that was closed first. *See id.* at 584–89. For the reasons cited both *supra* and *infra,* we decline to follow the approach of the Southern District of Georgia.

docket at the same time." *Id.* The court then remanded for a determination of whether *Devlin II* should be consolidated with *Devlin I*, which was reopened in a companion appeal. *See id.* at 129.

It is possible to limit the holding of the *Devlin* opinion by finding that it vacated the application of res judicata based on the fact that the judgment in *Devlin I* was reversed and the case reopened, but we believe that to be an incorrect reading. From the court's extensive analysis, it is clear that the Second Circuit found that res judicata was not appropriate in such a situation and contemplated that consolidation below would cure any future similar problems. The situation at bar is quite analogous in that the actions were closely related and pending before the same judge at the same time. Like the plaintiffs in *Devlin*, Tingley did not wait until the termination of the first case to commence the second case. Like the plaintiffs in *Devlin*, Tingley could have chosen to assert its new claims in the existing action, but instead chose to file a new action. The present situation is even more favorable to Tingley than was the situation in *Devlin* because Tingley's cases were consolidated. Tingley actively sought to bring the case to the attention of the district court to have it consolidated with the Bay State

cases. As a result, we find, as did the *Devlin* court, that res judicata is inapplicable to bar the later-filed action.[5]

For other reasons as well, we do not believe that Tingley should be "hoisted with [its] own procedural petard." Res judicata is a judge-made doctrine resting on policy considerations, *see Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 985 F.2d 27, 31 (1st Cir.1993), and in this case the policy considerations militate against the application of res judicata. "The policy rationale behind res judicata is to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Apparel Art Int'l*, 48 F.3d at 583 (quoting *Allen*, 449 U.S. at 94, 101 S.Ct. 411). None of those policy concerns is implicated here. First, there was no "cost and vexation of multiple lawsuits." At the time of the settlement, these cases were proceeding as if one case had been filed against co-defendants CSC and Bay State. The continuance of the case against CSC when only Bay State chose to settle is not the type of cost or vexation with which the res judicata doctrine is concerned. Second, Tingley's actions did nothing to waste judicial resources.[6] In asserting its claims

**5.** In addition to the holding in *Devlin*, we have found several cases that have suggested or assumed that consolidation precludes the use of the doctrine of res judicata to bar one action when the other action is resolved first. *See, e.g., Langston v. Insurance Co. of N. Am.*, 827 F.2d 1044, 1048 (5th Cir.1987) (finding the claims of a later-filed action to be barred by res judicata and stating that the plaintiff "could have, by amendment or consolidation, advanced" the precluded claims during the pendency of the first action, implicitly suggesting that consolidation would have prevented res judicata preclusion); *Wilkins v. Jakeway*, 993 F.Supp. 635, 651 (S.D.Ohio 1998) (finding an action to be barred by res judicata and stating that a plaintiff was put on notice that he should either move to consolidate or amend his pleadings in order to avoid the potential of res judicata preclusion, suggesting that consolidation of related actions bars the res judicata effect of one against the other), *rev'd on other grounds*, 177 F.3d 560

(6th Cir.1999); *Ben & Jerry's Homemade, Inc. v. FBJ Distribution, Inc.*, 791 F.Supp. 98, 100 n. 1 (D.Vt.1992) (finding an asserted potential res judicata issue to be moot because the allegedly preclusive case was consolidated with the allegedly precluded case). In *Hagee v. City of Evanston*, 729 F.2d 510, 514 (7th Cir.1984), the Seventh Circuit stated that "[t]he principle that res judicata extends to all matters within the purview of the original action, whether or not they were actually raised, is tantamount to a rule requiring parties to consolidate all closely related matters into one suit." Consolidation is exactly what Tingley did, and this passage in *Hagee* would seem to indicate that such consolidation is enough to ward off res judicata preclusion.

**6.** To the contrary, it is CSC's proposed res judicata rule that would waste judicial resources. Such a rule would discourage litigants from entering into partial settlements in consolidated cases. Plaintiffs would instead

against CSC, it mattered little in terms of judicial efficiency whether Tingley amended its pending Bay State action or filed a new action and immediately consolidated them. The cases still proceeded as if only one case existed. Finally, there was no concern for inconsistent decisions here because the cases were consolidated. This was not a situation in which one case was filed and proceeded to judgment, only to have another case come along threatening a contrary result. There was no greater risk of inconsistency here than would have existed if all claims had been brought by Tingley in one comprehensive complaint. As demonstrated above, one purpose of the res judicata doctrine is to prevent a plaintiff from raising claims that should have been raised in an earlier action. Thus, when a plaintiff consolidates two actions in order to ensure that all claims will be adjudicated together, it makes little sense to bar the later-filed claims once the original claims are settled.

In addition to these policy concerns, equitable considerations favor treating the consolidated cases as a single action for res judicata purposes. We agree with Tingley that, for all practical purposes, CSC and Bay State were co-defendants in a single lawsuit. Until the time of the settlement in the Bay State cases, the court treated the actions as one lawsuit with claims against multiple defendants. See, e.g., July 17, 1995 Transcript, at 43 (magistrate's statement that "this is consolidated" and that "[i]t's one big case in the eyes of the Court"). The only difference between the present situation and a single lawsuit with multiple claims is that Tingley chose to list its causes of action against CSC in a new complaint, rather than in an amended complaint in the Bay State cases. Tingley could ·easily have done the latter if it had known that it

risked res judicata preclusion, but Tingley's July 28, 1995 second amended complaint instead amended only the claims against Bay State. Equity demands that we not allow such a draconian result to turn on this procedural quirk.

There are accusations that Tingley filed the new complaint in order to avoid discovery deadlines in the Bay State cases, but even if those accusations are true, we do not believe that total preclusion of Tingley's claims against CSC is the proper punishment, if any punishment is appropriate. Tingley found out about CSC's involvement in the alleged wrongdoing very late in discovery in its case against Bay State. According to CSC and the district court, Tingley's alternatives were: (1) to amend its Bay State complaint to add claims against CSC, but proceed without discovery on those claims, or (2) to file a new action against CSC that would be precluded if Bay State chose to settle. Forcing Tingley to choose between those alternatives is not equitable, when neither alternative gave Tingley the opportunity to fully investigate and litigate its newly-discovered claims against CSC. In sum, we are persuaded by the Second Circuit's decision in *Devlin*, the policy concerns surrounding the res judicata doctrine, and equitable considerations that, at least in the limited circumstances presented here, the consolidated cases should have been treated as a single action for res judicata purposes. Consequently, the first element of the res judicata standard is not satisfied. There was no final judgment on the merits in an earlier action; there was only a final judgment on a portion of the aggregate case. Therefore, the application of res judicata in this case was inappropriate. We need proceed no further.[7]

litigate all claims against all parties to the end.

7. We need not address Tingley's appeal of the denial of its motion for relief from judgment in the Bay State cases, as that appeal has

been mooted. Tingley sought relief from judgment to avoid the res judicata effect of the stipulated dismissal in the Bay State cases, but we have already found that there is no res judicata effect.

## CONCLUSION

Based on the foregoing, the district court's entry of summary judgment in favor of CSC on Tingley's claims against it is **REVERSED**, and the CSC case is **REMANDED** to the district court for further proceedings. We **DISMISS** as moot Tingley's appeal from the district court's denial of its motion for relief from judgment in the Bay State cases.